FISHER v. JOHNSON MILK COMPANY, INC.

1. Pleading—Summary Judgment—Question of Fact.
   Summary judgment for defendant should be affirmed on appeal where no controverted question of fact is presented by the pleadings which if resolved in plaintiff's favor would entitle him to judgment against defendant (GCR 1963, 117).

2. Negligence—Duty to Warn—Obvious Danger—Question of Law—Summary Judgment.
   A manufacturer or seller of an item has no duty to warn or protect against dangers obvious to all nor to make a product accident-proof or foolproof, and a defendant who sold a wire carrier made to carry bottles of milk to plaintiff who subsequently dropped the carrier on an icy sidewalk, broke the milk bottles, and fell upon the broken glass was as a matter of law not negligent and was entitled to a summary judgment (GCR 1963, 117).

3. Pleading—Summary Judgment—Question of Fact.
   Summary judgment was properly granted on the count of breach of warranty where there were no allegations of fact which, if accepted as true, would support that claim (GCR 1963, 117).

Appeal from Court of Appeals, Division 2, T. G. Kavanagh, P. J., and Beer and Levin, JJ., reversing

References for Points in Headnotes
[1–3] 41 Am Jur, Pleading §§ 340–342.
[2] 38 Am Jur, Negligence § 18.
   26 Am Jur, Sales § 812 et seq.

and remanding Macomb, Howard R. Carroll, J. Submitted December 4, 1969. (Calendar No. 35, Docket No. 52,177.) Decided March 9, 1970.

13 Mich App 10 reversed.

Complaint by William L. Fisher against Johnson Milk Company, Inc., a Michigan corporation, for negligence and breach of implied warranty. Defendant's motion for summary judgment granted. Plaintiff appealed to Court of Appeals. Reversed and remanded. Defendant appeals. Reversed, and judgment of circuit court affirmed.

*William L. Fisher, in propria persona.*

*Michaels, Ferris & Olzark (Carl W. Huhn,* of counsel), for defendant.

DETHMERS, J.   A reading of opinions of this Court written during the past 15 years may suggest that a majority of the Court, as from time to time constituted, has viewed with disfavor the granting by trial courts of summary judgments for defendants in negligence cases.   In the instant case, however, not a controverted question of fact is presented by the pleadings which, if resolved in plaintiff's favor, would entitle him to judgment against defendant. Accordingly, I would affirm the summary judgment for defendant entered in circuit court, reversed by the Court of Appeals.   13 Mich App 10.

On an unspecified date defendant, operating a milk business, sold to plaintiff, a practicing patent attorney, a wire carrier made to carry four half-gallon bottles of milk.   Some time later plaintiff took that carrier, as he frequently had done before, to defendant's store and bought four half-gallon

bottles of milk which were placed in the carrier. With his milk purchases in the carrier plaintiff drove home. It was a stormy, rainy, freezing day with icy street and walk conditions. Upon arriving at home, plaintiff got out of his car and proceeded to walk, carrying the carrier containing the bottles of milk in his right hand. He slipped and fell on the ice in such manner that the bottom of the carrier struck the sidewalk, causing the bottles to break. He extended his left hand to break his fall and the palm landed on pieces of a broken bottle, cutting and causing a severe injury to his hand. For resultant damages plaintiff brought this suit.

The theory of plaintiff's case is twofold. (1) Defendant was negligent (a) in selling a carrier which lacked a false bottom or other device designed to protect the bottles from breaking, (b) in failing to warn plaintiff of the danger on such an icy day of carrying the bottles in said carrier and (c) in not placing the bottles, two each, in large paper bags for plaintiff to carry chest high as had been done previously, before plaintiff had purchased the wire carrier. (2) Defendant was guilty of breach of warranty in selling plaintiff such carrier, which was unsafe, and representing it to be merchantable and fit for the purpose for which it was sold.

There was no inherent, hidden or concealed defect in the wire carrier. Its manner of construction, how the bottles would rest in it, and what might happen if it were dropped, upright, on a hard surface below, with the possibility that the contained bottles might break, was plain enough to be seen by anyone including a patent attorney as well as a milk dealer. There is no duty to warn or protect against dangers obvious to all. *Jamieson* v. *Woodward & Lothrop* (1957), 101 App DC 32 (247 F2d

23).  In so holding in support of the trial court's summary judgment for defendant that court said:

"there are  *  *  *  on the market vast numbers of potentially dangerous products as to which the manufacturer owes no duty of warning or other protection.  The law does not require that an article be accident-proof or incapable of doing harm.  It would be totally unreasonable to require that a manufacturer warn or protect against every injury which may ensue from mishap in the use of his product.  Almost every physical object can be inherently dangerous or potentially dangerous in a sense.  A lead pencil can stab a man to the heart or puncture his jugular vein, and due to that potentiality it is an 'inherently dangerous' object; but, if a person accidentally slips and falls on a pencil point in his pocket, the manufacturer of the pencil is not liable for the injury.  He has no obligation to put a safety guard on a lead pencil or to issue a warning with its sale.  A tack, a hammer, a pane of glass, a chair, a rug, a rubber band, and myriads of other objects are truly 'inherently dangerous', because they might slip  *  *  *  .  A hammer is not of defective design because it may hurt the user if it slips.  A manufacturer cannot manufacture a knife that will not cut or a hammer that will not mash a thumb or a stove that will not burn a finger.  The law does not require him to warn of such common dangers.  *  *  *

"Surely a manufacturer is not negligent if he fails to utter a warning against a general possibility of danger  *  *  *  .  We do not agree with, and find no authority to support, a holding either that a manufacturer must utter a general warning of danger from mishap with an article such as this rope or that he must catalog injuries possible upon such a mishap."

To say that it was negligence not to have supplied a carrier of a different type, when defendant was

not obligated to furnish any kind of carrier at all, is scarcely supported by authorities cited by plaintiff or found by the writer. With no legal duty to supply a carrier so designed as to prevent bottles placed therein from breaking when dropped to a hard surface, the question of defendant's duty being one of law and not of fact, summary judgment for defendant was proper. *Levendoski* v. *Geisenhaver* (1965), 375 Mich 225. This is not the case of a piece of machinery, looking alright on the surface but containing a defect not observed or observable by plaintiff, which operated in such fashion, unexpectedly, as to be dangerous and to injure plaintiff.

In defendant's brief appears the following:

"A leading case on the subject is: *Campo* v. *Scofield* (1950), 301 NY 468 (95 NE2d 802), in which the New York Court of Appeals affirmed the dismissal of plaintiff's complaint for failure to state a cause of action. The instrumentality involved was an 'onion topping' machine. Plaintiff sought recovery for injuries sustained while operating the machine, alleging that the machine was inherently dangerous and negligently designed and manufactured in that defendant had failed to equip the machine with safeguards which would lessen the extent of the injuries which plaintiff suffered when his hands became caught in the rollers. The Court said:

" 'If the manufacturer does everything necessary to make the machine function properly *for the purpose for which it is designed,* if the machine is without any latent defect, and if its functioning creates no danger or peril that is not known to the user, then the manufacturer has satisfied the law's demands. We have not yet reached the state where a manufacturer is under the duty of making a machine accident proof or foolproof. Just as a manufacturer is under no obligation, in order to guard

against injury resulting from deterioration, to furnish a machine that will not wear out * * *, so he is under no duty to guard against injury from a patent peril or from a source manifestly dangerous. To illustrate, the manufacturer who makes properly and free of defects, an axe or a buzz saw or an airplane with an exposed propeller, is not to be held liable if one using the axe or buzz saw is cut by it, or if someone working around the airplane comes in contact with the propeller. In such cases, * * * the very nature of the article gives notice and warning of the consequences to be expected, of the injuries to be suffered. *In other words, the manufacturer is under no duty to render a machine or other article "more" safe—as long as the danger to be avoided is obvious and patent to all.'* (Emphasis added.) 95 NE2d 804.

"In *Stevens* v. *Durbin-Dusco, Inc.* (Mo, 1964), 377 SW2d 343, the Court, after stating that § 395 of the Restatement sets forth the standard of duty, continued:

" 'But the manufacturer is not liable as an insurer, and he is under no obligation to make the product accident proof or foolproof. *Stevens* v. *Allis Chalmers Manufacturing Company* (1940), 151 Kan 638 (100 P2d 723, 726–727); *Campo* v. *Scofield* (1950), 301 NY 468 (94 NE2d 802, 804); *Yaun* v. *Allis Chalmers Manufacturing Company* (1948), 253 Wis 558 (34 NW2d 853, 858). Since practically any product, regardless of its type or design, is capable of producing injury when put to particular uses, "a manufacturer has no duty so to design his product as to render it wholly incapable of producing injury * * * ", 1 Hursh, American Law of Products Liability, [Rules Regarding Duty as to Design] § 2:59, p 240. The manufacturer of a butcher knife, cleaver, or axe properly made and free of latent defects and concealed dangers, may not be held liable merely because someone was injured while using the product. Thus, a manufacturer is not liable to a man who

while using an iron dumbbell drops it on his foot'
(346–347).

"See also *Poore* v. *Edgar Bros. Co.* (1939), 33 Cal
App 6 (90 P2d 808).   \*   \*   \*

"In *Nabkey* v. *Jack Loeks Enterprises, Inc.* (1965),
376 Mich 397, the plaintiff was injured while jumping
on a trampoline. She appeals from a directed ver-
dict [for defendant]. The Court said, in affirming
the trial court, on page 400,

" 'Plaintiff fully understood the nature of the
device. She observed others using it. There was
nothing an instructor could have said or done which
was not readily apparent to her or which, under the
circumstances, was not under her sole control. No
instructor could remove the danger of becoming
unbalanced. The trampoline was in good operating
condition. It did exactly what it purported to do.' "

We consider the above lengthy excerpt from de-
fendant's brief well stated and applicable here on
the matter of a question of negligence on defend-
ant's part.

Considerations discussed above under the negli-
gence heading at the same time demonstrate that
there is no allegation of facts in plaintiff's com-
plaint, which, if accepted as true, would make out
a case of breach of warranty.

Court of Appeals reversed. Summary judgment
of the circuit court affirmed, with costs to defendant.

T. E. Brennan, C. J., and Kelly, and Adams, JJ.,
concurred with Dethmers, J.

Black and T. M. Kavanagh, JJ., concurred in
result.

T. G. Kavanagh, J., did not sit in this case.