DOWNIE v KENT PRODUCTS

Docket No. 52584. Submitted April 9, 1982, at Grand Rapids.—Decided February 8, 1983. Leave to appeal applied for.

Marjorie P. Downie had a portion of her hand amputated when the stamping press at which she was working cycled while she was removing a finished piece from the press. Downie's employer, Kent Products, through its insurer, Home Indemnity Company, paid workers' disability compensation benefits. Downie commenced an action in Muskegon Circuit Court against E. W. Bliss Company, manufacturer of the press, Gulf and Western Industry, Inc., and Gulf and Western Industrial Products Company, present owners of E. W. Bliss Company, and General Motors Corporation, owner of the die used in the press at the time of the accident, alleging separate counts of negligence, breach of warranty, strict liability, and fraud. Prior to trial, summary judgment was granted in favor of General Motors Corporation. At the close of plaintiff's proofs, E. W. Bliss Company moved for a directed verdict as to all of plaintiff's theories. Ronald H. Pannucci, J., granted the motion as to the strict liability, fraud and part of the breach of warranty counts but denied the motion with respect to the negligence count arising from Bliss's failure to warn of potential dangers associated with the operation of the press. The jury was given a

REFERENCES FOR POINTS IN HEADNOTES

[1] 63 Am Jur 2d, Products Liability § 51.
Manufacturer's or seller's duty to give warning regarding product as affecting his liability for product-caused injury. 76 ALR2d 9.
[2] 63 Am Jur 2d, Products Liability §§ 42, 47.
[3] 63 Am Jur 2d, Products Liability § 204.
[4] 29 Am Jur 2d, Evidence §§ 134, 211.
 30 Am Jur 2d, Evidence § 1121.
 57 Am Jur 2d, Negligence §§ 127, 144.
 63 Am Jur 2d, Products Liability §§ 58, 61.
[5] 5 Am Jur 2d, Appeal and Error § 842.
[6] 63 Am Jur 2d, Products Liability § 61.
[7] 63 Am Jur 2d, Products Liability § 58.
[8] 63 Am Jur 2d, Products Liability § 56.
[9, 10] 82 Am Jur 2d, Workmen's Compensation § 426.
[11, 12] 82 Am Jur 2d, Workmen's Compensation § 364.

special verdict form which permitted it to apportion fault among plaintiff, E. W. Bliss Company, and Kent Products, even though Kent Products was not a party to the action. The jury found the total amount of damages was $121,000 and found that plaintiff's injury was caused by the negligence of Bliss and Kent Products with Bliss being apportioned 55% of the negligence and Kent Products 45%.

Following the jury's verdict, plaintiff filed an amended complaint, adding Kent Products and The Home Indemnity Company as defendants and seeking a declaratory judgment limiting the rights of these defendants relative to the statutory reimbursement of workers' disability compensation benefits. Over the objection of Kent Products and Home Indemnity, plaintiff was permitted to amend her complaint. The trial court ordered that Kent Products and Home Indemnity would be reimbursed for workers' disability compensation benefit which had been paid only to the extent that such benefits exceeded $54,450, the amount of damages attributable to Kent Products based upon the jury's apportionment of negligence. Kent Products and Home Indemnity Company appeal. E. W. Bliss appeals. *Held:*

1. Since the injury resulted from a mechanical failure of the clutch latch assembly of the press which was not obvious to the plaintiff, E. W. Bliss was not, as a matter of law, relieved from its duty to warn of known dangers on the basis of an obvious danger or on the basis that plaintiff was an experienced press operator.

2. While the question of whether a duty exists is generally a question for the trial judge, where, as here, there are disputed facts as to the foreseeability of the danger and the necessity of a warning, the question is one for jury resolution after proper instructions.

3. The failure to specifically object at trial to the testimony of plaintiff's expert witness on the basis that the testimony embraced an ultimate fact or legal conclusion precludes appellate review of the question of the propriety of the admission of the expert's testimony, there being no showing that manifest injustice resulted from the admission of that testimony.

4. There was evidence that Bliss was aware of the problem with the clutch latch assembly but, while notifying owners of the press of the possible mechanical problem, failed to characterize the problem as a safety problem or notify owners of the possibility of injury if the assembly failed. That evidence, when coupled with plaintiff's testimony that she was not aware of the

possibility of injury when operating a press in apparently good mechanical condition, was sufficient to create a jury question as to whether Bliss had a duty to warn and as to whether the warning given was adequate.

5. Plaintiff's testimony that she would have acted differently had she been warned of the possible machine malfunction was sufficient to establish prima facie proof that Bliss's breach of its duty to warn was a proximate cause of plaintiff's injury.

6. The trial court erred in admitting evidence that, subsequent to the construction of the press in question, Bliss attached warning tags to its presses, since such testimony is clearly contrary to the public policy that evidence of subsequent acts may not be used as evidence of prior negligence. The admission of such evidence, which went to the heart of the question in dispute, mandates reversal and remand for a new trial.

7. It was error to instruct the jury to apportion negligence between Bliss and plaintiff's employer, since plaintiff's employer, having paid workers' disability compensation benefits, could not be held to be jointly liable with the third-party tortfeasor, Bliss.

8. The employer and its workers' disability compensation carrier have the statutory right to full reimbursement of the disability benefits that have been paid or are payable. It was therefore error to limit such reimbursement to the amount exceeding the portion of the verdict which would represent the apportioned negligence of the employer. The adoption of comparative negligence did not affect the statutory right to reimbursement. To the extent that such a result does not encourage good safety measures by employers, the question is one which must be decided by the Legislature.

Reversed and remanded.

1. PRODUCTS LIABILITY — NEGLIGENCE — FORESEEABILITY — OBVIOUS DANGER.

A faulty clutch latch assembly of a stamping press is not an obvious hazard which should be observed or observable by the operator of the press.

2. PRODUCTS LIABILITY — DUTY TO WARN.

A manufacturer of a machine is not excused from its duty to warn of dangers arising from the use of the machine by reason of the fact that the operator of the machine is experienced in the operation of the machine.

3. PRODUCTS LIABILITY — DUTY TO WARN — QUESTION OF LAW —
   QUESTION OF FACT.

    The question of the duty to warn of dangers, in a products liability case, is generally decided by the trial court as a matter of law; however, where the facts presented at trial are a matter of dispute, the jury has a function in the decision on whether a duty exists; where there might be a reasonable difference of opinion as to the foreseeability of a particular risk and the reasonableness of a defendant's conduct with respect to it, the question is for the jury.

4. NEGLIGENCE — BURDEN OF PROOF.

    A plaintiff, in order to avoid a directed verdict in a negligence action, must provide proof of each of the four elements of negligence: (1) that the defendant owed a duty to plaintiff; (2) that the defendant violated that duty; (3) that the defendant's breach of duty was a proximate cause of the damages suffered by the plaintiff; and (4) that the plaintiff suffered damages.

5. EVIDENCE — ULTIMATE FACT — PRESERVING QUESTION.

    The failure to object to testimony on the specific ground that the testimony embraced either the ultimate fact to be decided by the trier of fact or a legal conclusion precludes appellate review of the question of propriety of the admission of such testimony absent a showing of manifest injustice.

6. PRODUCTS LIABILITY — EVIDENCE — DUTY TO WARN — ADEQUACY
   OF WARNING.

    Prima facie proof of a manufacturer's duty to warn of a known danger is shown where the evidence at trial shows that the manufacturer of a stamping press was aware of a mechanical defect which could cause the press to cycle and notified the owner of the press of the possibility of mechanical failure of the assembly but failed to characterize the problem as a safety problem or indicate the possibility of injury if the mechanical failure occurred.

7. PRODUCTS LIABILITY — DUTY TO WARN — PROXIMATE CAUSE —
   EVIDENCE.

    Prima facie proof that a manufacturer's breach of its duty to warn of dangers was a proximate cause of an injury suffered by an individual using a machine manufactured by the manufacturer is established where there is testimony that the injured individual would have taken additional precautions had the danger been known.

8. Products Liability — Evidence — Duty to Warn — Public Policy.

Evidence of remedial warning tags or placards affixed to machines subsequently sold is not admissible to establish the negligent breach of the manufacturer's duty to warn of dangers with respect to a machine previously sold, since the admission of such evidence would be contrary to the public policy that safety improvements should be encouraged; the admission of such evidence mandates a retrial where the central issue at trial concerned whether the manufacturer had breached its duty to warn (MRE 407).

9. Workers' Compensation — Torts — Third-Party Tortfeasors — Joint Liability — Contribution.

The exclusive remedy by an employee against his employer is for disability benefits under the Worker's Disability Compensation Act; once the employer has paid such benefits, the employer has no common-law liability and may not be joined as a defendant with the manufacturer of the equipment used by the employee in an action by the employee against the manufacturer of the equipment for damages for his injuries (MCL 418.131; MSA 17.237[131]).

10. Products Liability — Negligence — Apportionment of Negligence — Workers' Compensation.

It is error to instruct a jury in an action by an employee against a third-party tortfeasor manufacturer that it should apportion negligence between the employer, which has paid workers' disability compensation benefits, and the manufacturer of the machinery used by the employee at the time of the injury.

11. Workers' Compensation — Third-Party Tortfeasors — Reimbursement for Disability Benefits.

The Worker's Disability Compensation Act requires that the employer or its workers' disability compensation carrier be reimbursed for disability benefits which have been paid or are payable to the employee from any recovery in an action against a third-party tortfeasor arising out of the injury to the employee; only the excess after reimbursement is payable to the employee (MCL 418.827[5]; MSA 17.237[827][5]).

12. Workers' Compensation — Third-Party Tortfeasors — Reimbursement for Disability Benefits — Comparative Negligence.

The adoption of comparative negligence in Michigan does not

affect the statutory right of an employer to seek full reimbursement for workers' disability payments which have been paid or are payable out of a recovery by the employee in an action against a third-party tortfeasor; it is error to reduce such reimbursement by an amount equivalent to the employer's comparative negligence; it is for the Legislature to decide whether full reimbursement serves to promote employer disregard of safety.

*McCroskey, Libner, Van Leuven, Feldman, Cochrane & Brock* (by *J. Walter Brock*), for plaintiff.

*Rhodes, McKee & Boer* (by *Michael J. Roberts*), for Kent Products and The Home Indemnity Co.

*Cholette, Perkins & Buchanan* (by *Kenneth L. Block*), for E. W. Bliss Company.

*Smith, Haughey, Rice & Roegge* (by *Lance R. Mather*), for General Motors Corporation.

Before: MacKenzie, P.J., and D. E. Holbrook, Jr., and D. S. DeWitt,* JJ.

D. S. DeWitt, J. On December 10, 1975, plaintiff suffered traumatic amputation of a portion of her right hand when it was crushed in a press which she was operating. The press had been manufactured by defendant E. W. Bliss Company. Defendant Bliss sold the press to plaintiff's employer, Kent Products, on June 16, 1961. At the time of her injury, plaintiff was using the press in conjunction with a die supplied by defendant General Motors Corporation. Plaintiff's employment required her to hand-load and hand-remove items which the press formed by a single stroke operating cycle activated by dual palm switches. Plaintiff was in the act of removing a finished piece from

* Circuit judge, sitting on the Court of Appeals by assignment.

the press when it inexplicably restruck and crushed her hand.

Defendants Kent Products and The Home Indemnity Company paid workers' compensation benefits to the plaintiff. The instant action was filed against defendants Bliss and General Motors. Plaintiff's complaint alleges separate counts of negligence, breach of warranty, strict liability, and fraud. Following a three-year discovery period, General Motors moved for and was granted summary judgment dismissing it from the suit.

At trial, upon the close of plaintiff's proofs, defendant Bliss moved for a directed verdict on all plaintiff's theories of recovery. The judge granted the motion in part, dismissing the strict liability and fraud counts, as well as part of plaintiff's cause of action for breach of warranty. The trial judge denied Bliss's motion for a directed verdict on plaintiff's theory of negligence arising from a failure by Bliss to warn of potential dangers associated with the operation of the press:

"The court denies the motion. I could give a long dissertation as to why, but it would have nothing to do with being truthful with either party as far as the legal burden. It has to do with the current status of our appellate process and the appellate courts deciding cases *in toto* with not all of the whole portion of the case. And so, as a result, I'll be on the cautious side. I totally disagree with the record, with the defendants' contention that there is no evidence on this record which a reasonable jury could find that there was a duty to warn. But I would deny the motion. If it gets to the Court of Appeals, they can totally dispose of this case rather than remanding it to a trial court to waste double or triple time.

"With reference to the engineering design, there is evidence to establish a fact question. With the warning issue, there isn't. But I'll let it go to the jury."

When the case was submitted to them, the jury was provided with a special verdict form. This form permitted them to apportion fault among plaintiff, Bliss and Kent Products, even though Kent Products was not a party to this action. The jury returned a verdict finding that plaintiff's injury was caused by the negligence of defendants Bliss and Kent Products, and apportioned 55% of the negligence to Bliss and 45% to Kent Products. The total amount of damages was assessed by the jury at $121,000.

Following the return of the jury's verdict, plaintiff filed an amended complaint, adding Kent Products and The Home Indemnity Company as parties and seeking a declaratory judgment limiting the rights of these defendants to reimbursement of workers' compensation benefits. Pursuant to stipulation of the parties present at the trial, the trial judge permitted amendment of plaintiff's complaint.

Both Kent Products and Home Indemnity objected to the amendment of plaintiff's complaint. On plaintiff's motion for entry of judgment, the trial judge rejected the arguments of Kent Products and Home Indemnity. He ordered that their right to reimbursement for workers' compensation benefits paid to plaintiff be limited to amounts paid in excess of the sum of $54,450, the amount of damages attributable to Kent Products based on the jury's apportionment of negligence. Kent Products and The Home Indemnity Company now appeal the lower court order permitting amendment of plaintiff's complaint. Defendant Bliss Company appeals the trial court's denial of its motion for a directed verdict as to plaintiff's negligence count and the claimed error in the admission of evidence.

The argument of defendant Bliss raises two distinct issues. The question of whether there was a legal duty to warn under the facts of this case must be distinguished from the question of whether plaintiff presented sufficient evidence at trial on this theory to withstand a motion for directed verdict. Bliss argues that its motion for directed verdict should have been granted because as a matter of law there is no duty to warn or protect against dangers that are obvious or open. See *Durkee v Cooper of Canada, Ltd,* 99 Mich App 693; 298 NW2d 620 (1980).

Bliss relies principally upon the decision of the Supreme Court in *Fisher v Johnson Milk Co, Inc,* 383 Mich 158; 174 NW2d 752 (1970). In that case, the defendant had sold to plaintiff a wire carrier constructed to carry four half-gallon bottles of milk. Plaintiff was injured while transporting milk in the carrier when he slipped on a patch of ice, striking the carrier on the sidewalk, and breaking the bottles it held. In affirming the lower court's grant of summary judgment for the defendant, the Supreme Court noted that there was no inherent, hidden, or concealed defect in the wire carrier. The possibility that the bottles it contained might break if the carrier were dropped on a hard surface could plainly be seen by anyone.

In the instant case, the power press operated by the plaintiff had obvious capacity to cause serious physical injury. However, the precise mechanical failure of the press that caused plaintiff's injuries was not readily apparent. Evidence introduced at trial indicates that plaintiff's injuries resulted from a mechanical failure within the clutch latch assembly of the press. This defect was not the type of obvious hazard considered by the *Fisher* Court. Indeed, the *Fisher* opinion, itself, distinguishes

that case from the present one: "This is not the case of a piece of machinery, looking alright on the surface but containing a defect not observed or observable by plaintiff, which operated in such fashion, unexpectedly, as to be dangerous and to injure plaintiff." *Fisher, supra,* p 162.

Nor was the duty to warn excused in this case because plaintiff was an experienced press operator. In *Graham v Ryerson,* 96 Mich App 480; 292 NW2d 704 (1980), this Court discredited the argument that there is no duty to warn "experts".

As a general rule, the question of whether a duty exists is one that must be resolved by a trial judge as a matter of law. However, when the facts at trial are in dispute and give rise to a reasonable difference of opinion as to the foreseeability of a particular risk and the reasonableness of a defendant's conduct in that regard, the jury should resolve the issue after proper instruction. *Robertson v Swindell-Dressler Co,* 82 Mich App 382; 267 NW2d 131 (1978). Our inquiry then turns to the issue of whether plaintiff presented sufficient evidence at trial to withstand defendant Bliss's motion for a directed verdict.

A directed verdict is appropriate whenever a plaintiff fails to establish a prima facie case. In an action premised upon the alleged negligent failure to warn of a known danger, the plaintiff must supply sufficient evidence on each of the following four elements of that theory: that the defendant owed a duty to plaintiff; that the defendant violated that duty; that the defendant's breach of the duty was a proximate cause of the injury suffered by the plaintiff; and, that the plaintiff suffered damages. *Falkner v John E Fetzer, Inc,* 113 Mich App 500; 317 NW2d 337 (1982); *Beals v Walker,* 98 Mich App 214; 296 NW2d 828 (1980). The fact that

plaintiff suffered damages was not contested in this case.

With regard to the question of whether sufficient evidence was presented to make out a prima facie case that defendant owed a duty to plaintiff, the record indicates that in establishing this element plaintiff relied principally upon the testimony of a project engineer for defendant Bliss and upon the testimony of her expert. The testimony of Bliss's project engineer tended to establish that the presses sold by Bliss were often hand-loaded in the shops that used them. He acknowledged that the hand-loading of presses, without point-of-operation safety devices, was unsafe and that amputations were a significant problem.

The thrust of the testimony of plaintiff's expert, a professor of mechanical engineering at the University of Michigan, was that an adequate warning of the dangers associated with operating the press was not given by Bliss. Bliss argues on appeal that plaintiff's expert was, impermissibly, allowed to reach legal conclusions in his testimony. We observe, however, that this objection was not made at trial. Rather, at trial, counsel for Bliss objected to the testimony of this witness only insofar as his competence and experience had not been established on the record. The testimony was not objected to because it embraced the ultimate fact. Absent the presence of manifest injustice, we cannot pass upon Bliss's argument that the expert should not have been permitted to reach legal conclusion in his testimony for lack of such an objection at trial. Evidentiary objections must be specific and cite the precise ground for the objection. *People v Worrell,* 111 Mich App 27; 314 NW2d 516 (1981). Since the attorney for Bliss pursued this line of testimony on cross-examina-

tion of the witness, no manifest injustice has resulted which would permit defendant Bliss to now challenge the expert's testimony on the ground that it embraced an ultimate fact or legal conclusion.

Considered as a whole, then, the evidence presented by plaintiff made out a prima facie case that defendant Bliss had a duty to warn press operators of the dangers associated with operating its presses.

As to the issue of Bliss's breach of this duty, the testimony of its project engineer concedes the absence of any mention within the press manual of the possibility of an injury such as that sustained by plaintiff. Plaintiff's expert characterized the manual as "substantially inadequate". Further evidence of the breach of the duty to warn can be found in a letter sent by Bliss to Kent Products on November 12, 1975, approximately four weeks prior to plaintiff's injury. This letter concerned the possibility of mechanical failure in the clutch and latch bracket assemblies of Bliss presses. The project engineer for Bliss agreed that the letter did not characterize the potential mechanical failure as a "safety problem", *i.e.,* it did not indicate that there was a possibility of injury if the mechanical failure actually occurred. Nor did it clearly state that a press could go into the automatic cycle unexpectedly if the mechanical failure occurred. Plaintiff's expert testified that the letter was not adequate warning of the potential for danger because of its failure to delineate the possibility of severe consequences resulting from the loss of contact between the latch and clutch assemblies.

Finally, the testimony of plaintiff herself has some bearing on this question. She testified that she was not aware of the possibility of injury from

the press when it was operating in apparently good mechanical condition. On the day of the injury, she had no indication that the press was not in good working condition. Therefore, we conclude that, even though the evidence on the question of whether Bliss breached its duty to warn was conflicting, plaintiff's evidence on this point made out a prima facie case. The final element requiring some quantum of proof to withstand the motion was a showing that the breach by Bliss was a proximate cause of her injuries. Thus, plaintiff needed to produce evidence showing that if a proper warning had been given, she would have taken precautions to prevent the injury. *Falkner, supra.*

The evidence as to the possible effect that such a warning directed to the plaintiff herself would have had is in dispute. On cross-examination, plaintiff revealed that she knew of similar accidents that had occurred to press operators. Further, she admitted that a hypothetical sign on a press warning of possible injury if an operator placed his or her hands in the die space would not have told her anything that she did not already know. However, she also testified that, if a sign had been placed on the press to the effect that a hand placed in the die space could be crushed or amputated, she would not have placed her hands within the space. The jury could have reconciled this testimony by interpreting it in the light of plaintiff's subsequent testimony that she thought she was in no danger of injury if the press were working properly. That is, the jury could have concluded that, had plaintiff known that a press which appeared to be in good mechanical condition could still cause the kind of injury that she sustained, she might have taken some precaution to

insure against the possibility of such injury. Thus, there was evidence in the record upon which the jury reasonably could have concluded that the failure by Bliss to warn of possible physical injury was a proximate cause of plaintiff's injuries.

Defendant Bliss correctly points out that plaintiff's employer was not entirely free from negligence in the maintenance of the press. However, the testimony of Kent Products' maintenance personnel is equivocal. The person in charge of maintenance at Kent testified that, although he inspected the latch mechanism on plaintiff's press on the day of the accident, he did not inspect the stop pin because he was not fully aware of its function. Further, the manager of the Kent Products plant testified that he would have "reacted differently" to the November 12, 1975, letter from defendant Bliss had that letter advised that a failure of the safety pin would create an unsafe situation. When considered as a whole, the evidence can be read to establish that Kent Products was not fully aware of the consequences of the mechanical shortcomings in the clutch and latch assemblies and that it might have altered its maintenance practices had a more specific and compelling warning been given. Therefore, we conclude that plaintiff had presented sufficient evidence to establish a prima facie case that the failure of defendant Bliss to give adequate warnings was a proximate cause of her injuries.

The trial judge correctly denied defendant Bliss's motion for a directed verdict on plaintiff's negligence count. Plaintiff's evidence did make out a prima facie cause of action.

Defendant Bliss next argues that error occurred when testimony concerning its practice of putting warning tags on the presses it sold after 1965 was

admitted in evidence at trial. It argues that evidence of this practice, which began four years after the press that caused plaintiff's injuries was sold to Kent Products, was not properly admitted.

As a general rule, evidence of remedial measures undertaken by a defendant subsequent to a tortious event is not competent to prove negligence:

"When, after an event, measures are taken which, if taken previously would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control or feasibility of precautionary measures, if controverted, or impeachment." MRE 407.

In the instant case, the remedial measures referred to occurred four years after the claimed negligent act of selling the press involved in this case without a warning placard. During oral argument, the attorney for the plaintiff repeatedly stressed that the delivery of the press, in 1961, without a warning tag or placard affixed to it was *the* breach of duty that formed the core of plaintiff's negligence count. Under the present circumstances, then, the public policy justification underlying MRE 407 was violated by admission of this evidence. As this Court stated in *Phillips v J L Hudson Co,* 79 Mich App 425, 426-427; 263 NW2d 3 (1977):

"The primary rationale for the rule is that admission of such evidence would discourage owners from attempting preventative repair because of the fear that evidence of such acts might be construed as an admission of prior culpable conduct."

A manufacturer should be as free as possible to make continual improvements in the safety of its products without having to evaluate the possibility of creating evidence against itself from previously manufactured products. Certainly, it is less likely that safety improvements will be made if the decisions to make them involve balancing the safety of the consumer against the potential effect on liability for previously manufactured products.

The most significant issue at trial was whether defendant Bliss violated a duty to warn users of its presses of their potentially dangerous characteristics. The trial judge recognized the closeness of this issue. The admission into evidence of the tags attached to presses manufactured by Bliss after 1965 was so highly prejudicial as to deny Bliss a fair trial. Therefore, we must reverse and remand for a new trial.

Two additional related issues require comment because of the likelihood that they will arise on retrial. Defendants Kent Products and Home Indemnity argue that the trial judge erred in instructing the jury to apportion damages between themselves and Bliss. They also contend that it was an error for the trial judge to enter judgment against them limiting their right to reimbursement for workers' compensation payments to reflect the finding of the jury that Kent Products was 45% responsible for plaintiff's injuries.

When an employee's injury is within the scope of the Worker's Disability Compensation Act, workers' compensation benefits are the employee's exclusive remedy against the employer. MCL 418.131; MSA 17.237(131); *Szydlowski v General Motors Corp,* 397 Mich 356, 358; 245 NW2d 26 (1976); *Solakis v Roberts,* 395 Mich 13, 20; 233 NW2d 1 (1975); *Bednarski v General Motors Corp,*

88 Mich App 482, 484; 276 NW2d 624 (1979). Thus, the exclusive remedy provision of the act bars any common-law tort cause of action by an employee against his employer. *Sewell v Bathey Mfg Co,* 103 Mich App 732, 736; 303 NW2d 876 (1981); *Milton v Oakland County,* 50 Mich App 279, 283; 213 NW2d 250 (1973). Once the employer has paid the workers' compensation claims, the employer has no common-law liability and is not a joint tortfeasor with the manufacturer of malfunctioning equipment against whom the employee seeks recovery for injuries. *Husted v Consumers Power Co,* 376 Mich 41; 135 NW2d 370 (1965).

In *Husted,* the plaintiff was injured when the crane he was operating came into contact with power lines of defendant, Consumers Power Company. Consumers filed a third-party complaint against plaintiff Husted's employer, Hertel-Dego, charging negligence on the employer's part and demanding contribution. The Court stated:

"Thus, if Husted could not sue his employer (Hertel-Dego), and we know he could not, Hertel-Dego and Consumers cannot be joint tort-feasors by law. Consumers, therefore, cannot sue Hertel-Dego for contribution should it be held to respond to plaintiff in damages." 376 Mich 56.

The rationale behind denying third-party tortfeasors a right of contribution against a negligent employer was aptly stated in *Douglas v Robbins & Myers, Inc,* 505 F Supp 765, 769 (WD Mich, 1980).

"To hold otherwise destroys the *quid. pro quo* of workers' compensation as it is known in Michigan. Under the statutory scheme, an injured employee is entitled to prompt payments from his employer for certain work-related injuries regardless of the fault or lack of fault of his employer. In exchange, the employer

is granted immunity from further liability arising out of that injury. See *Husted [v Consumers Power Co]*, 376 Mich [41], 52-53; 135 NW2d 376. The legislature and the Supreme Court of Michigan were certainly aware of this statutory scheme and the balancing involved in the workers' compensation statute when they introduced comparative negligence to Michigan and there is nothing to indicate an inclination by those lawmakers to alter that balance through comparative negligence. Any such adjustment must be undertaken openly and forthrightly by the Michigan legislature."

In the case at bar the trial court erred in instructing the jury to apportion negligence between the employer, Kent Products, and the manufacturer, Bliss. Furthermore, the trial court compounded this error by allowing the reimbursement of the employer and its insurer to be reduced by a percentage determined by the negligence of the employer.

The employer's right to be reimbursed from a judgment recovered by an employee from a third-party tortfeasor is statutory. MCL 418.827(5); MSA 17.237(827)(5). This section states:

"(5) In an action to enforce the liability of a third party, the plaintiff may recover any amount which the *employee* or his dependents or personal representative *would be entitled to recover* in an action in tort. *Any recovery against the third party* for damages resulting from personal injuries or death only, after deducting expenses of recovery, *shall first reimburse the employer or carrier for any amounts paid or payable* under this act to date of recovery and the balance shall forthwith be paid to the employee or his dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payments of compensation benefits." (Emphasis added.)

The right to reimbursement was also embodied

in the prior workers' compensation act, MCL 413.15; MSA 17.189. It has even been found to be a common-law subrogation right. In *Hix v Besser Co,* 19 Mich App 468; 172 NW2d 821 (1969), the Court of Appeals went so far as to call reimbursement of the employer or his compensation carrier the primary reason for allowing an action by the employee against a third party. Only after the employer is reimbursed does the employee receive the excess which remains. *Hix, supra; Manninen v Warner & Swasey Co,* 80 Mich App 253; 263 NW2d 341 (1977). The only qualification which may reduce the reimbursement to the employer would be an insufficiency in the amount of the judgment awarded. *Banoski v Moto-Crane Service, Inc,* 35 Mich App 487; 192 NW2d 555 (1971).

The employer's right to reimbursement stems from its liability to pay compensation in the first place. *Griggs v Budd Co,* 90 Mich App 649; 282 NW2d 431 (1979). The employer is entitled to recover all payments made up to the time of trial. *Ford v Kuehne,* 242 Mich 428; 219 NW 680 (1928); *Grand Rapids v Crocker,* 219 Mich 178; 189 NW 221 (1922). The employer, having paid compensation, may recover against the negligent third person, regardless of whether the payment was in full. *Albert A Albrecht Co v Whitehead & Kales Iron Works,* 200 Mich 109; 166 NW 855 (1918). In fact, where the employer remains obligated to make compensation payments to the employee, the employer must be credited with that amount still payable and be reimbursed for those future payments out of the judgment as well. *Crawley v Schick,* 48 Mich App 728; 211 NW2d 217 (1973).

The relationship of an employer paying workers' compensation to an injured employee and a third-party tortfeasor is that of indemnitor (employee)/

indemnitee (employer) with the liability falling on the third party. *Bay State Milling Co, for use and benefit of Hartford Accident & Indemnity Co v Izak,* 310 Mich 601; 17 NW2d 769 (1945). Thus, the employer is subrogated to the rights of the employee, both under the statutory language and by the continuing construction of the courts. As a result of this relationship, only defenses of the third party which are available against the employee are available against the employer. *Utley v Taylor & Gaskin, Inc,* 305 Mich 561; 9 NW2d 842 (1943); *Stafford v E W Bliss Co,* 86 Mich App 197; 272 NW2d 237 (1978).

The contributory negligence of the employee thus barred the subrogation rights of his employer. *Hekman Biscuit Co for the use and benefit of Royal Indemnity Co v Commercial Credit Co,* 291 Mich 156; 289 NW 113 (1939). Contributory negligence of the employer, on the other hand, was no bar to the recovery of the employee. *Stafford v E W Bliss Co, supra.* Although under this section the employer may enforce the liability of the third-party tortfeasor, the employer's right to recover is that of the injured employee. The test of liability is whether the employee could have held the tortfeasor liable for his injuries. *Ayers v Genter,* 367 Mich 675; 117 NW2d 38 (1962).

Consequently, the trial court misunderstood the statutory reimbursement right when it permitted reduction in the amount the employer could recover out of the employee's judgment. The employer is entitled to complete reimbursement even if that eliminates any share for the employee. However, if the judgment is not large enough to totally recompense the employer, he can not collect a deficiency from the employee. *Albrecht, supra.*

Finally, we are not persuaded by defendant Bliss's argument that the adoption of comparative negligence in Michigan affects the employer's right of reimbursement. The adoption of comparative negligence by the Michigan Supreme Court in *Placek v Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979), did not affect the legal position of the parties under the Worker's Disability Compensation Act. *Placek* deals only with the balancing of the relative degrees of negligence attributable to the plaintiff and defendant here, Ms. Downie and Bliss. In *Placek,* the Court, quoting from *Kirby v Larson,* 400 Mich 585, 644; 256 NW2d 400 (1977), said:

"The doctrine of pure comparative negligence does not allow one at fault to recover for one's own fault, because damages are reduced in proportion to the contribution of that person's negligence, whatever that proportion is. The wrongdoer does not recover to the extent of his fault, but only to the extent of the fault of others. To assume that in most cases the plaintiff is more negligent than the defendant is an argument not based on equity or justice on the facts. What pure comparative negligence does is hold a person fully responsible for his or her acts and to the full extent to which they cause injury. That is justice." 405 Mich 661.

On remand, the trial court may not allow the jury to consider the negligence of the employer in determining the award to the plaintiff against the third party, Bliss. Nor may the indemnification rights of the employer and its insurer be reduced by any percentage. To do so would fly in the face of the clear statutory language. Although defendant Bliss, in its brief, cites cases from sister states which permit the reduction of an employer's recovery by the percentage of negligence attributed to the employer, the Michigan statute cannot reason-

ably be construed in this fashion. Nor can we agree that allowing Kent Products to recoup the amounts paid out in compensation without considering its negligence serves to promote employer disregard of safety. The Legislature may decide that such is the case, but until it does, we are not free to change the statutory scheme developed over many years.

The policy underlying the workers' compensation scheme is prompt payment to an injured employee by funds from the industry in which he is employed, while limiting the liability of the employer by shielding it from common-law tort actions. *Lahti v Fosterling,* 357 Mich 578, 585; 99 NW2d 490 (1959). Both employee and employer receive certain clear benefits from the scheme but, in return, surrender certain other rights. If the employer's right to reimbursement rested solely on common-law subrogation, perhaps the court would have the right to modify this right to conform to the underlying principles announced in *Placek.* However, the workers' compensation system is wholly a creature of statute. The court is not free to redraw the statute because of the change in tort concept brought about by *Placek.*

On remand, the trial court may not permit the jury to consider the negligence of Kent Products in determining the liability of Bliss to plaintiff Downie, nor may it reduce Kent's recovery out of her judgment by any amount perceived to be related to its responsibility for plaintiff's injuries.

Reversed and remanded for a new trial to be held in conformity with this opinion.