812 F.2d 1409
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Charles WALKER, Administrator of the Estate of Otis Walker,
deceased, Plaintiff-Appellant,
v.
DANLY MACHINE CORPORATION, Defendant-Appellee.
 No. 85-1486.
 United States Court of Appeals, Sixth Circuit.
 Jan. 29, 1987.
 
 Before WELLFORD and GUY, Circuit Judges, and PECK, Senior Circuit Judge.
 GUY, Circuit Judge.
 
 
 1
 Plaintiff, Charles Walker, administrator of the estate of Otis Walker, deceased, initially filed this products liability suit in Michigan state court against defendant, Danly Machine Corporation, a Delaware corporation. Danly removed the case to the United States District Court for the Eastern District of Michigan based on diversity of citizenship. The district court granted defendant's motion for summary judgment on all six of plaintiff's theories of liability. Plaintiff appeals the dismissal of three of the six claims. For the reasons set forth below, we affirm.
 
 
 2
 The decedent, Otis Walker, an employee of General Motors, was crushed to death by a press which was designed and built by defendant Danly. Danly sold the press to the Cadillac Motor Division of General Motors in 1958. As originally manufactured, the press was wired for operation by one to four workers. There were four separate control panels, one at each corner of the press. Each panel had dual palm buttons and stop button. The press could only cycle when each operator depressed both palm buttons. General Motors later modified the press so that it could be operated from either the original control panels or from a portable control panel attached to the press by an extension cord. The modified controls operated in a two-step sequence whereby the first depression of the button aligned the part in the press; the second push caused the press to cycle, stamping the part.
 
 
 3
 When the accident occurred, Otis Walker was attempting to manually reposition a part which had been improperly fed into the press by the automatic feeder. Apparently, one of Walker's co-workers thought he could facilitate the process by activating the automatic alignment system. When the worker depressed the button, the press cycled and Walker was fatally injured.
 
 
 4
 Plaintiff asserts three theories of liability on appeal. First, plaintiff argues that the design of the press was defective because it was not equipped with "interlocked barriers" which would prevent the press from cycling while the worker was in the die space. Secondly, plaintiff asserts that the defendant should have affixed warning signs on the press. Finally, plaintiff claims that the emergency stop buttons were improperly placed. Plaintiff contends that each of these claims raises issues of fact regarding the reasonableness of defendant's conduct, and therefore, the trial judge erred in granting defendant's motion for summary judgment.
 
 I.
 
 5
 In its motion for summary judgment, defendant relied heavily on two Michigan Court of Appeals cases, Bullock v. Gulf Western Mfg., 128 Mich.App. 316 (1983), and Villar v. E.W. Bliss Co., 134 Mich.App. 116 (1984), appeal denied, 472 Mich. 871 (1985). In both cases the injured workers claimed that the presses were defective because they lacked adequate safety devices. The court of appeals affirmed directed verdicts in favor of defendants in both cases. In Bullock, the court of appeals reasoned:
 
 
 6
 Because of the limitations imposed by the guarding devices, such a guard placed on the punch press before it was assembled into the entire system would turn what is intended as a multi-purpose press into a single purpose press.... We agree that this would be an unreasonable burden to impose upon a manufacturer who has been "hired" to supply a multi-purpose press.
 
 
 7
 128 Mich.App. at 322 (citations omitted).
 
 
 8
 The Bullock court also noted that the press was merely a single component in a metal forming system and that the defendant manufacturer could not foresee that the purchasor would use the press in an unsafe manner. Id. at 321-22.
 
 
 9
 Likewise, in Villars, the court of appeals stated:
 
 
 10
 Plaintiff's expert admitted that defendant's press was a multi-purpose press and that this meant it was designed for a wide variety of operations. He also admitted it was impossible for defendant to install a safety device which would cover all purposes to which the press could be assigned. At the time of the sale, the press had neither a motor nor any dies and, thus, was incapable of injuring anyone in the way that plaintiff had been injured.
 
 
 11
 It follows then that, absent evidence that defendant knew or had specific reason to know that the original purchaser would use the press unsafely, it had no duty to provide safety devices not ordered by that purchaser.
 
 
 12
 134 Mich.App. at 121.
 
 
 13
 In the instant case, the district judge found these cases to be controlling, and therefore, granted summary judgment in favor of Danly. Plaintiff attempted to distinguish these cases by alleging that the press involved here was not a single component with multiple functions, but rather, an integral part of an entire system designed, built, and installed by Danly for the sole purpose of stamping hoods. Defendant, however, contended that the press was a multi-purpose press sold as a single unit F.O.B. Danly, and that it was not equipped with dies for making any particular part. Defendant supplied an affidavit by a Danly engineer in support of its contention. Plaintiff failed to provide a counter-affidavit or any other form of substantiation for his version of the facts.
 
 
 14
 Under Fed.R.Civ.P. 56(e), the trial judge had the discretion to accept defendant's version of the facts as being true. Therefore, in light of the relevant Michigan case law, the trial judge did not err in granting defendant's motion for summary judgment on this theory.
 
 II.
 
 15
 Plaintiff argues that defendant negligently failed to attach warnings to the press alerting operators to the dangers involved. In support of his position, plaintiff cites to Downie v. Kent Products, 122 Mich.App. 722 (1983), rev'd in part on other grounds, 420 Mich. 197 (1984), reh'g denied, 421 Mich. 1202 (1985). In Downie, the court of appeals overturned a directed verdict in favor of defendant with respect to defendant's duty to warn. 122 Mich.App. at 730. We find Downie inapposite to the instant case. The Downie court recognized the general rule that there is no duty to warn of an obvious danger. Id. at 730 (citing Fisher v. Johnson Milk Co., 383 Mich. 158 (1970). The Downie court went on to conclude, however, that there were exceptional circumstances involved in that case because the defendant failed to warn the operator of a hidden mechanical defect which caused the press to cycle unexpectedly.
 
 
 16
 In the instant case, plaintiff did not allege the existence of a hidden mechanical defect or other circumstances which would bring this case within the Downie rationale. The potential danger of a large industrial press is plainly obvious, and therefore, the trial judge did not err in granting summary judgment against plaintiff on the warning issue.
 
 III.
 
 17
 Plaintiff's final contention is that the design of the press was defective because the emergency stop buttons were inaccessible to the decedent who was trapped in the press. Plaintiff argues that this claim raises an issue of fact; and therefore, the district court judge erred in granting defendant's motion for summary judgment.
 
 
 18
 At oral argument, plaintiff's counsel relied on the Michigan Court of Appeals decision in Young v. E.W. Bliss, 130 Mich.App. 363 (1983), in support of his contention that the defectiveness of the design was a question for the jury. In Young, the plaintiff was injured when he leaned against the portable controls of a press, thereby activating the press while he was in the point of operation. The defendant which manufactured the press moved for a directed verdict on the basis that the portable control was added by the plaintiff's employer and that the accident was caused by this subsequent modification, not by the original design. The court of appeals affirmed the trial court's denial of the motion for directed verdict, reasoning that the jury should determine whether or not such a modification was foreseeable. Id. at 369. In support of its holding, the Young court cited several cases which stood for the proposition that a jury should decide whether the intervening negligent act of a third person constitutes a superseding proximate cause. Id. at 369 (citations omitted).
 
 
 19
 We find plaintiff's reliance on Young misplaced. In the instant case, plaintiff's theory of liability involved the original placement of the emergency stop buttons, not the modification of the controls.[1] As plaintiff stated in his original brief in opposition to defendant's motion for summary judgment, "Neither party claims that General Motors in any way changed the location or design of the emergency controls." (App.172a). Unlike the injured worker in Young, the decedent in the instant case did not activate the press when the accident occurred. Rather, the decedent was in the die area attempting to realign a part when the press was activated by a co-worker who was standing a few feet away from the decedent at the portable controls. Thus, the fact that GM modified the press by adding a portable control unit is irrelevant to plaintiff's claim in the instant case and distinguishes this case from Young where the modification of the control unit was the central issue.
 
 
 20
 In order to state a claim for defective design under Michigan's products liability law, a plaintiff must first allege the existence of a "defect" which is defined as a design which causes an unreasonable risk of a foreseeable injury. See Prentis v. Yale Manufacturing Co., 421 Mich. 670, 694 (1984). In addition, plaintiff must also show some type of causal connection between the alleged defect and the injuries complained of in the instant case. Caldwell v. Fox, 394 Mich. 401, 407 (1975). Arguably, the reasonableness of the design of the press with respect to the location of the emergency stop buttons is a question of fact which should be determined by the jury. Nevertheless, we conclude that the district judge did not err in granting defendant's motion for summary judgment because the second element of plaintiff's claim, i.e., causation, is wholly lacking.
 
 
 21
 The United States Supreme Court has recently set forth the standard to be used in determining whether or not to grant a motion for summary judgment. In Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986), the Court stated:
 
 
 22
 Under Rule 56(c), a summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In our view, the plain language of Rule 56(c) mandates the entry of a summary judgment, after adequate time for taking discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.
 
 
 23
 106 S.Ct. at 2552-53.
 
 
 24
 Even assuming, arguendo, that the Danly press had been equipped with the hypothetical stop mechanisms recommended by the plaintiff's expert witness, there is nothing in the record to indicate that these devices would have prevented the accident which occurred in the instant case. As previously noted, the decedent was working in the die area when the press was activated by his co-worker who was operating the portable controls. According to the deposition testimony of plaintiff's expert, the portable control station was also equipped with an emergency stop button. (App. 97a). In fact, according to the accident report compiled by the Michigan Department of Labor, the co-worker who activated the press stated that he "hit the emergency stop button on the controls--but it was too late." (App. 13a). Plaintiff failed to even suggest how the decedent who was trapped in the die area could have possibly availed himself of some hypothetical emergency stop device, whereas the co-worker who activited the press and who had immediate access to a stop button could not act in time to save the decedent.
 
 
 25
 Based on the undisputed evidence in the record, we conclude that plaintiff failed to allege sufficient facts to show a causal connection between the alleged design defect and the injuries suffered by the decedent in the instant case.
 
 
 26
 For the foregoing reasons, the grant of summary judgment in favor of defendant is AFFIRMED.
 
 WELLFORD, Circuit Judge, concurring:
 
 27
 I concur with Judge Guy's disposition of issues I and III, and agree that summary judgment for defendant was appropriate with regard to these claims.
 
 
 28
 With respect to the alleged failure to warn, I would agree that Downie v. Kent Products, 122 Mich.App. 722 (1983), rev'd in part on other grounds, 420 Mich. 197 (1984), reh'g denied, 421 Mich. 1202 (1985), is not controlling because that case involved a non-obvious defect, not a danger apparent to the plaintiff's decedent and others operating it. ("The precise mechanical failure of the press that caused plaintiff's injuries was not readily apparent ... this defect was not readily apparent ... this defect was not [a] type of obvious hazard...."). 333 N.W.2d at 532.
 
 
 29
 Plaintiff, moreover, in the brief filed in response to defendant's motion for summary judgment, made these concessions on this issue:
 
 
 30
 It may have been obvious to Mr. Walker that he could be injured by the press.
 
 
 31
 * * *
 
 
 32
 Although it may have been obvious to Mr. Walker that he could be caught in the press ...
 
 
 33
 Mr. Walker may have been willing to risk some minor injury.
 
 
 34
 J/A 170a.
 
 
 35
 Despite these concessions, plaintiff argued before the district court, and on appeal, that defendant, regardless of the evident and obvious danger of the press "failed to show that the danger [of death] was appreciated." (J/A 171a). Plaintiff cited Graham v. Ryerson & Sons, 96 Mich.App. 480, 292 N.W.2d 704 (1980), in support of his contention. Graham, however, acknowledges the rule in Michigan that "there is no duty to warn of dangers obvious to all users ... or of specific dangers fully known to the complainant at the time the injury occurred." 292 N.W.2d at 707. Graham goes further to acknowledge case law that there is no duty to warn "members of a particular trade ... where the danger involved is a matter of common knowledge." Id. at 707. Graham, moreover, was based on the court's finding that it was not in that case "presented with the question of obvious danger," id. at 707, rather of "consciousness of a vague danger." Id. at 708.
 
 
 36
 Although the issue on the failure to warn is troublesome, I would concur under the circumstances in the record that reasonable minds could not differ but that danger of serious injury was obvious to one who placed himself in Mr. Walker's position. Moreover, plaintiff did not demonstrate that it was this defendant's design, rather than General Motors' modifications, that caused or allowed the machinery to be operated in the fashion that it was at the time in question.
 
 
 37
 I would concur, therefore, for these reasons, that summary judgment for defendant was not inappropriate on the failure to warn issue.
 
 
 
 [1]
 On appeal, plaintiff expressly abandoned the theories of liabilities involving the portable control unit which was added by General Motors after it purchased the press from defendant Danly