Robert KIRK, as Next Friend of Amanda Gryka, a Minor, Plaintiff-Appellant,

v.

HANES CORPORATION OF NORTH CAROLINA; and Bic Corporation, a New York Corporation, Defendants-Appellees.

No. 91-2305.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 2, 1992.

Decided Feb. 22, 1994.

Rehearing Denied March 28, 1994.

Christopher R. Sciotti, St. Clair Shores, MI (argued and briefed), for Robert Kirk.

Allan G. Meganck, Allan G. Meganck & Associates, Detroit, MI, for Hanes Corp. of North Carolina.

Robert D. Brignall (briefed), Thomas M. Peters (argued), Pamela L. Abbott, Vandeveer & Garzia, Detroit, MI, for Bic Corp.

Before: RYAN and SUHRHEINRICH, Circuit Judges; and CONTIE,* Senior Circuit Judge.

SUHRHEINRICH, Circuit Judge.

Plaintiff Robert Kirk appeals the summary judgment entered by the District Court for the Eastern District of Michigan in favor of Defendant Bic Corporation (Bic) in Kirk's products liability suit. The district court certified this judgment pursuant to Fed.R.Civ.P. 54(b), we have jurisdiction, and the judgment is **AFFIRMED**.

### I.

The facts in this case are not in dispute. On the morning of October 29, 1987, Diane Gryka returned home from work before her husband, Wayne Gryka, left for his job. Diane and Wayne smoked a pipe of marijuana together in their living room and, when Wayne had to leave, Diane fell asleep on the couch. They left their disposable butane lighter lying on the living room table.

While Diane slept, her five-year-old son used the lighter to light a candle. The boy then used the candle to set fire to the T-shirt worn by his three-year-old sister, Amanda. Diane awoke to her daughter's screams but Amanda was severely burned before the flames could be extinguished.

Robert Kirk, as next friend of Amanda, filed suit in Michigan state court against Hanes Corporation (Hanes), the manufacturer of the T-shirt Amanda was wearing. Hanes removed the case to federal court based upon the diversity of citizenship of the parties. Kirk then amended his complaint, adding Bic as a defendant and alleging that Bic had been negligent in failing to design a child-proof or child-resistant lighter.[1]

---

\* The Honorable A. Leon Higginbotham, Jr., Senior Circuit Judge of the United States Court of Appeals for the Third Circuit, was a member of the panel for oral argument but retired on March 5, 1993. Senior Circuit Judge Leroy J. Contie, Jr., took part in subsequent deliberation as a member of the panel. The parties waived reargument.

1. Kirk also alleged that Bic was negligent for failing to warn of the dangers of letting children have unsupervised access to its lighters. Kirk abandoned this claim, however, when discovery disclosed the fact that Bic did warn of this danger and when both of the Grykas admitted that they were well aware of the danger of letting their children play with lighters. *Kirk v. Hanes,* 771 F.Supp. 856, 859–60 (E.D.Mich.1991). We note, in passing, that Bic's warning, though given, is not required under Michigan law. *See Glittenberg v. Doughboy Recreational Industries,* 441 Mich. 379, 491 N.W.2d 208, 215 (1992).

## II.

Rule 56 provides that summary judgment is appropriate whenever "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The second summary judgment requirement involves, by its own terms, a determination of law. This determination we review *de novo. Brooks v. American Broadcasting Co.,* 932 F.2d 495, 500 (6th Cir.1991). In the present case, the district court held, as a matter of law, that even though "injuries due to unsupervised children playing with the lighter may be foreseeable, such risks are not unreasonable." *Kirk v. Hanes,* 771 F.Supp. 856, 859 (E.D.Mich.1991). Therefore, the district court concluded, Bic's failure to "child-proof" its lighters was not actionable under Michigan law. *Id.*[2] We agree.

If the issue in this case is stated broadly, *i.e.,* whether a manufacturer of a simple tool is required to design safety features to protect users from dangers that are obvious and inherent in the tool's utility, that question has been squarely addressed by the Michigan Supreme Court and resolved in favor of the manufacturer. *See Fisher v. Johnson Milk Co.,* 383 Mich. 158, 174 N.W.2d 752, 753 (1970).

Even if the relevant issue is stated more narrowly (to avoid the controlling effect of *Fisher* ), *i.e.,* whether a manufacturer of a disposable lighter must child-proof its product, that question was addressed recently by a Michigan appellate court and, on the authority of *Fisher,* resolved in favor of the manufacturer. *See Adams v. Perry Furniture Co.,* 198 Mich.App. 1, 497 N.W.2d 514, 520 (1993), *application for lv. to app. filed,* (No. 95875) (Feb. 9, 1993).

Kirk argues that *Fisher* should not control because it is out of step with recent Michigan Supreme Court decisions. Therefore, Kirk also argues that, because *Adams's* reliance upon *Fisher* was error, *Adams* should be ignored. In support of his claims, Kirk cites *Glittenberg v. Doughboy Recreational Industries,* 441 Mich. 379, 491 N.W.2d 208, 214

(1992), and *Owens v. Allis–Chalmers Corp.,* 414 Mich. 413, 326 N.W.2d 372, 377 (1982).

▮ The task of this court, sitting in diversity, is to apply the same law as would be applied by the Michigan state courts. *See Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Where a state's highest court has spoken to an issue, we are bound by that decision unless we are convinced that the high court would overrule it if confronted with facts similar to those before us. *Bernhardt v. Polygraphic Co. of Am.,,* 350 U.S. 198, 205, 76 S.Ct. 273, 277, 100 L.Ed. 199 (1956). Moreover, where a state appellate court has resolved an issue to which the high court has not spoken, "we will normally treat [those] decisions ... as authoritative absent a *strong showing* that the state's highest court would decide the issue differently." *Garrett v. Akron–Cleveland Auto Rental, Inc. (In re Akron–Cleveland Auto Rental, Inc.),* 921 F.2d 659, 662 (6th Cir.1990) (emphasis added).

▮ Because we are not convinced that *Fisher* would be overruled by the Michigan Supreme Court, or that *Adams* would be rejected by that court, we hold that these cases control and bar Kirk's products liability claim based upon Bic's allegedly defective design.

### A.

In *Fisher,* as in the present case, the plaintiff claimed that the manufacturer of a simple tool was negligent for failing to design a safety device to protect him from an obvious danger associated with its use. *Fisher,* 174 N.W.2d at 753. The court observed that a "manufacturer · cannot manufacture a knife that will not cut or a hammer that will not mash a thumb or a stove that will not burn a finger." *Id. (quoting Jamieson v. Woodward & Lothrop,* 247 F.2d 23, 26 (D.C.Cir.), *cert. denied,* 355 U.S. 855, 78 S.Ct. 84, 2 L.Ed.2d 63 (1957)). Therefore, the court held, manufacturers of such simple tools have "no duty

---

**2.** We note that the issue of Bic's liability under Michigan law for failure to child-proof its lighters has been before the Eastern District of Michigan three times in recent years. The results have run the gamut of possible outcomes: Bic not liable as a matter of law, *Kirk,* 771 F.Supp. at

859; Bic liable as a matter of law, *Bondie v. Bic Corp.,* 739 F.Supp. 346, 349 (E.D.Mich.1990); and Bic's liability reserved for jury determination, *Carlson v. Bic Corp.,* 840 F.Supp. 457 (E.D.Mich.1993).

to warn *or protect* against dangers obvious to all." *Id.* (emphasis added).

Kirk contends that *Fisher* is no longer "good law" because *Prentis v. Yale Mfg. Co.,* 421 Mich. 670, 365 N.W.2d 176 (1984), changed the standard for assessing manufacturers' liability for negligent design. In *Prentis,* the court adopted a "pure negligence, risk-utility test." *Id.* 365 N.W.2d at 186. Under this test, a product is "defective" and "unreasonably dangerous" if it poses an unreasonable risk of foreseeable injury. *Id.* at 187.

Even though *Fisher* was decided prior to *Prentis,* it also applied a "pure negligence" standard. There, the plaintiff sued the manufacturer of a wire, milk bottle carrier because, when the plaintiff dropped the carrier, the milk bottles broke and he cut his hand on one of the fragments. Although the court phrased its holding in terms of *"duty," Fisher,* 174 N.W.2d at 753, the holding clearly rests, in modern parlance, on the ground that the manufacturer did not *breach* its duty to market products free from unreasonable risk of foreseeable harm. While the risks that glass bottles will break or that broken glass might injure someone are inarguably *foreseeable,* the court determined that such risks, as a matter of law, were not *unreasonable* given the obvious nature of the danger and the simple nature of the product. *Id.* at 753–54.

Our conclusion that *Fisher* remains viable and bars Kirk's claim is consistent with the result recently reached, on nearly identical facts, by the Michigan Court of Appeals in *Adams v. Perry Furniture Co.,* 497 N.W.2d 514 (Mich.Ct.App.1993). On the continued strength of *Fisher,* the court held that Bic's failure to child-proof its lighters was not actionable under Michigan law. *Id.* at 520. The court reasoned that, although the risk that a child might injure himself with a lighter is *foreseeable,* such a risk is not *unreasonable* because the danger is obvious to adults who were the intended users of the product and who had been specifically warned to keep the lighter out of the hands of children. *Id.* Rather than hold Bic liable for the child's injuries, the court held that "the risk of danger to children is best obviated by the supervisory control of the product by its

adult purchasers." *Id.* To hold otherwise, the court said, would be to make the manufacturer the insurer of its product, a position Michigan courts have consistently refused to take. *Id.*

**B.**

Kirk argues that *Owens* overruled *Fisher* and limited the "open and obvious danger" rule to cases based upon a failure to warn, rather than a design defect. We disagree. The court in *Owens* affirmed a directed verdict in favor of a forklift manufacturer on the ground that the plaintiff had not proven that the lack of driver restraints presented an unreasonable risk of harm. In reaching this conclusion, however, the court declined to hold that, simply because the lack of driver restraints was "open and obvious," the forklift manufacturer could not be liable under *Fisher. Owens,* 326 N.W.2d at 376–77.

*Owens,* however, focused on the manufacturer's alleged negligence in designing a forklift, a *complex* machine. Thus, it was a factually inappropriate case in which to apply the simple tool doctrine adopted in *Fisher,* a distinction which the court in *Owens* expressly acknowledged.

> Our Court of Appeals has essentially limited language in our decision in *Fisher* by the fact that *Fisher* involved a simple product or tool. *We believe that such a limitation is proper.* Obvious risks may be unreasonable risks, and there is no justification for departing from general negligence ... principles merely because the dangers are patent.

*Id.* at 377 (emphasis added and citations omitted).

■ The last sentence quoted, upon which Kirk relies, must be read in light of the ratification of *Fisher* which precedes it. Obvious risks presented by one aspect of a complex machine, such as the forklift in *Owens,* may or may not be unreasonable when considered in the light of feasible alternatives, the utility of the product and the impact of proposed alternatives on its overall safety. This intricate balancing is, in the ordinary case, best left to the jury. *Id.* at 376–78. Those cases, as the above-quoted

language makes clear, stand in contrast to cases such as *Fisher* in which the product is a simple tool that presents a single, obvious risk inherent in the product's utility. Therefore, we read *Owens* as refusing to extend *Fisher* to design defect cases involving complex machines, while acknowledging the continued validity of *Fisher* in design defect cases arising out of the use of simple tools.[3]

■ Kirk also relies upon *Glittenberg* as support for his argument that *Fisher* should not be followed. *Glittenberg* concerned only the continued validity of the "open and obvious danger" rule in failure-to-warn cases, *Glittenberg*, 491 N.W.2d at 214–15, and its discussion of design defect cases is mere dicta. But, because even dicta may be of some value in ascertaining the relevant state law, we consider it on that basis. *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985).

In *Glittenberg*, the court stated:

> Our jurisprudence recognizes the well-established rule that there is no duty to warn of dangers that are open and obvious.[4] We have also narrowed application of the no-duty rule to those cases involving "simple tools or products." *Owens v. Allis–Chalmers Corp.*, 414 Mich. 413, 425, 326 N.W.2d 372 (1982). We have rejected the proposition that the "open and obvious danger" rule is an incantation that obviates the threshold inquiry of duty in design defect cases.

*Glittenberg*, 491 N.W.2d at 214 (footnote omitted).

We are not convinced that this language conflicts with our understanding that *Fisher* remains a viable theory of defense in design cases involving simple tools. The *Glittenberg* court's citation to *Owens* as having limited the "open and obvious danger" rule, we believe, indicates that the limitation extends only to complex tools such as the forklift in

*Owens.* Specifically, the second sentence in the quoted passage seems to us to support, rather than weaken, our conclusion that *Fisher* remains viable in design defect cases involving simple tools.

## C.

Were we to reject *Fisher* and *Adams*, as Kirk argues, we would have to hold that the determination of whether a particular design presents an unreasonable risk of foreseeable injury may *never* be resolved by the court on summary judgment. This we cannot do.

Both *Fisher* and *Adams* were appellate reviews of summary judgments. Both decisions affirmed the use of this procedure where the facts were clear and no genuine dispute as to the reasonableness of the manufacturer's conduct had been shown. Moreover, the Michigan Supreme Court has specifically condoned summary disposition of products liability suits in *Moning v. Alfono*, 400 Mich. 425, 254 N.W.2d 759 (1977). Despite the general rule favoring jury determination, the "issue of negligence may be removed from jury consideration if the court concludes that overriding considerations of public policy require that a particular view be adopted and applied in all cases." *Id.* 254 N.W.2d at 770. We believe that this is such a case.

As with any manufacturer, Bic has a duty not to market products that present an unreasonable risk of foreseeable injury. We conclude, as did the court in *Adams* and the district court below, that no reasonable juror—in light of the fact that the danger of lighters is obvious to their intended users—could find that these lighters pose an *unreasonable* risk of harm. Therefore, the question of reasonableness, albeit a question of

---

3. The persuasive force of *Owens* is further undercut by the fact that the argument rejected there was based upon the "open and obvious" *absence* of a safety device. In the present case, as in *Fisher*, the plaintiff's claim is barred by an obvious *danger* inherent in the use of the simple tool. While the absence of driver restraints in the forklift in *Owens* was certainly obvious, the need for those restraints was not so obvious. The

danger that a forklift might roll over is less obvious than the danger that a flame might burn or that an unprotected glass bottle might break.

4. The *Glittenberg* opinion cites *Fisher* for this proposition which, as previously discussed, held that a manufacturer has no duty to warn *or protect* against obvious dangers.

fact, is here appropriately resolved as a matter of law.[5]

## III.

Not only is our conclusion that *Fisher* and *Adams* should control in this case compelled by Michigan case law, it is also compelled by common sense and the public policy of Michigan as articulated by that state's highest court. In cases involving obvious dangers inherent in simple products, the Michigan Supreme Court has focused on where responsibility for the safe use of those products should lie. For Kirk to prevail, we must shift responsibility for safeguarding children away from the adult purchasers and intended users and on to the manufacturer. We believe that the Michigan Supreme Court would reject such a result on public policy grounds.

This case involves the allocation of responsibility between adults and manufacturers for protecting small children from the dangers inherent in everyday, simple tools that are manufactured for, and sold to, adult users. The Michigan Supreme Court addressed the policy behind this allocation in *Moning*. There, the court contrasted its case, in which liability was based upon a manufacturer marketing slingshots directly to children, with a hypothetical case, in which liability was sought simply on the basis that the use of slingshots entails an inherent danger of injury. *Moning*, 254 N.W.2d at 771. The court broadly hinted that this latter example, which we believe is equivalent to the present case, would be proper for summary disposition on the ground that the "interests of mature persons who wish to purchase and use slingshots might . . . supersede the inter-

ests of those who may be harmed by their careless or improper use." *Id.*

The court reasoned that summary disposition would be proper in its latter example because, if the product is marketed only to adults, as was the Bic lighter in the present case, the adults would bear responsibility for preventing careless use by children. *Id.* at 773. Having marketed its product directly to children, however, and thus bypassed adult supervision, the court held that the question of whether the manufacturer's conduct constituted negligence must be resolved by a jury. *Id.* at 774–75.

Thus, *Moning* provides a clear statement of the public policy of the state of Michigan. A manufacturer who bypasses adults, upon whom the law ordinarily places responsibility, and markets a simple, but dangerous, tool directly to children may not avoid liability on the ground that the child "should have known better." By the same token, however, where a manufacturer markets its simple tool only to adults, to whom the danger is obvious, and relies upon them to keep the product away from children, that reliance is, as a matter of law, not negligent. *See Adams*, 497 N.W.2d at 520.

## IV.

In sum, we hold that the "open and obvious danger" rule, first enunciated in *Fisher*, remains a valid limitation on a manufacturer's liability for claimed "design defects" in Michigan cases arising out of the use of simple tools. Therefore, on the continued strength of *Fisher* as evidenced by *Adams*, we hold as a matter of law that the risk of injury to this plaintiff, while foreseeable to Bic, was not unreasonable. The dan-

---

5. This court reached a similar conclusion on nearly identical facts in *Byler v. Scripto–Tokai Corp.*, Nos. 90–6112, 90–6113, 1991 WL 181749 (6th Cir. Sept. 7, 1991) (unpublished).

Were we to hold otherwise, the principle that we would have to adopt would permit virtually every manufacturer of a household tool or appliance to be found negligent. Knives, guns, blenders, saws, drills: the list of helpful tools perfectly safe in adult hands but dangerous in the hands of unsupervised children is endless. In all of these cases, the utility of the tool is high and the probability of harm is virtually nil when the child is properly supervised. Even

here, had the adults not been drinking, had they not carelessly left lighters hanging around the house even though they knew that [the child] could operate a lighter and use it as a toy, the accident would never have happened. *When the risk of harm is so low, and requires misbehavior on the part of supervising adults to occur, we cannot hold a manufacturer has acted unreasonably.*

*Id.* at *6 (emphasis added). Although *Byler* applied Kentucky law, Kentucky and Michigan do not differ significantly on the issue of a manufacturer's negligence in design.

gers presented by a device whose whole purpose is producing flame are obvious. Where, as here, that device is sold only to adults who know and are warned of the dangers of letting children play with the product, Bic's decision not to child-proof its lighters was not negligent.

■ The public policy of Michigan, as evidenced in *Moning,* provides that the primary responsibility for safeguarding children from the obvious and inherent dangers associated with the hundreds of simple tools with which we surround ourselves rests with the *parents* of these children and not the *manufacturer* of the simple tool.[6] Only where the manufacturer has affirmatively bypassed this chain of responsibility should the child, as plaintiff in a lawsuit, look to the manufacturer for protection or compensation.

For the reasons stated above, the district court's summary judgment in favor of Bic Corporation is

**AFFIRMED.**

CONTIE, Senior Circuit Judge, concurring.

I believe I must concur that the judgment of the district court should be affirmed because *Adams v. Perry Furniture Co.,* 497 N.W.2d 514 (Mich.Ct.App.1993) is currently the controlling law in Michigan in regard to this issue. An application for leave to appeal *Adams* was filed with the Michigan Supreme Court on February 9, 1993 (Michigan Supreme Court Docket No. 95875), but to date no action has been taken. I prefer that the panel in the present case hold its decision in abeyance until the Michigan Supreme Court rules on *Adams,* which I believe may be contrary to the direction the Michigan Supreme Court is moving in light of the dicta

expressed in *Glittenberg v. Doughboy Recreational Industries,* 491 N.W.2d 208 (Mich. 1992). However, unless *Adams* is overruled by the Michigan Supreme Court, *Adams* states the controlling Michigan law, which we are bound to apply in this diversity action.

RYAN, Circuit Judge, dissenting.

The majority argues that our judgment is circumscribed by the Michigan Court of Appeals' decision in *Adams v. Perry Furniture Co.,* 497 N.W.2d 514 (Mich.App.1993). I agree that a federal court may not disregard the decisions of a state's intermediate appellate court unless we are "convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. AT & T Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). It seems to me that *Adams* was mistakenly decided, and I do not think the Michigan Supreme Court would decide the case in the same manner. I reach this conclusion after reviewing language in a recent Michigan Supreme Court decision, *dicta* to be sure, which persuades me that it would not. Accordingly, I must dissent.

In *Adams,* the Michigan Court of Appeals ruled that Bic Corporation does not have a duty to manufacture child-resistant lighters. The facts of *Adams* are simple, and are somewhat similar to the facts in the present case:

> [The] Plaintiff [in *Adams* ] is the personal representative of the estates of four minor children who died in a fire in the family home. Plaintiff's complaint alleged that the decedents were asphyxiated and died as a result of inhaling the fumes of a burning mattress.... [A] disposable butane lighter ... allegedly caused the fire.

*Adams,* 497 N.W.2d at 515. The plaintiff raised both failure to warn and negligent

---

6. It may be that this public policy has been superseded by recent changes in federal regulations, at least with regard to cigarette lighters. The Consumer Products Safety Commission recently promulgated regulations requiring that all disposable and novelty lighters meet minimum child-resistance standards beginning in July 1994. *See* Safety Standards for Cigarette Lighters, 58 Fed.Reg. 37,557–01 (July 13, 1993) (to be codified at 16 C.F.R. § 1210.1–1210.20). These regulations can be seen as an administrative finding that disposable lighters present an unrea-

sonable risk unless equipped with child-resistant features. On the other hand, these regulations may merely represent the Commission's determination that, although ordinary lighters are not unreasonable, greater protection than that offered by the common law of products liability is needed. In any event, the regulations are irrelevant to Bic's liability in the present case as the findings were not made until after plaintiff's injuries and the regulations do not become effective until July 1994.

design theories against Bic. In its opinion, the *Adams* court addressed the failure to warn theory first. The court concluded that, as a matter of law, Bic owed plaintiff no duty to warn because the lighter was a simple tool and the danger was open and obvious. *Id.* at 519–20. The court next turned to the negligent design theory and stated:

> The test in design defect cases concerning simple tools is whether the risks are unreasonable in light of the foreseeable injuries.... The parties do not dispute that it is foreseeable that children will handle lighters and might injure themselves in doing so. However, we are not persuaded that the risk of this danger imposes a duty upon the manufacturer of the lighter to make it child-resistant in light of the fact that the product is intended to be sold to adults.... Moreover, Bic placed a warning on its lighters to keep them out of the reach of children. We believe that the risk of danger to children is best obviated by the supervisory control of the product by its adult purchasers. We recognize the tragic loss of life under these circumstances. However, courts have never made sellers insurers of their products and thus absolutely liable for any and all injuries sustained from the use of those products.... Thus, we conclude that Bic does not have a duty to manufacture child-resistant lighters.

*Id.* at 520 (citations omitted).

Our threshold task is to determine whether we think the Michigan Supreme Court would reach the same conclusion. I do not think it would. *Adams* rejected the use of the open and obvious rule to determine whether Bic lighters are negligently designed. I agree that the Michigan Supreme Court would adopt this much of *Adams*'s holding. The Michigan Supreme Court opinion in *Glittenberg v. Doughboy Recreational Industries,* 491 N.W.2d 208 (Mich.1992), foreshadowed this result.

*Glittenberg* involved duty to warn cases and, therefore, does not directly govern the issue before us. Nevertheless, its *dicta* provides us with some guidance as to how the Michigan Supreme Court would likely rule if it were faced with the facts before us. *Glit-*

*tenberg* indicates that if the supreme court were considering a design defect case involving a simple tool, it is likely the court would not apply the open and obvious rule to hold, as a matter of law, that the manufacturer's duty to design a reasonably safe product was obviated: "We have rejected the proposition that the 'open and obvious danger' rule is an incantation that obviates the threshold inquiry of duty in design defect cases." *Id.* at 214. The *Glittenberg* court discussed why the "open and obvious" rule does not apply to design defect cases:

> Obviousness of danger is merely one factor in the analysis of whether a design is reasonable.
>
> . . . .
>
> ... When a design defect claim is examined, the obvious nature of the product-connected danger will not preclude a court from entertaining a plaintiff's claim that an alternative design could feasibly reduce the risk of injury. However, when a negligent failure to warn claim is examined, the open and obvious danger of a simple product may preclude a plaintiff from establishing the requirement of duty of the prima facie case.

*Id.* at 215–16.

The rationale for the "open and obvious" rule is clear in failure to warn cases. If the danger of a product is open and obvious, there is no need for any warnings. The obviousness of the danger takes the place of warnings, and, therefore, the duty to warn is excused. It is less clear why the "open and obvious" rule should be dispositive in defective design cases. The manufacturer's duty in a design defect case is "to eliminate any unreasonable risk of foreseeable injury." *Prentis v. Yale Mfg. Co.,* 365 N.W.2d 176, 186 (Mich.1984). This rule contemplates balancing the risk of harm against the utility of a particular design. *Id.* at 184. If the dangerousness of a product is open and obvious, this may be a factor that contributes to the decision whether the product is "*unreasonably* dangerous." *Owens v. Allis–Chalmers Corp.,* 326 N.W.2d 372, 377 (Mich.1982) (emphasis added). But the ultimate determinant of whether the design of a product is "unreasonably dangerous" is "whether the alleged

defect in the design ... created an unreasonable risk of foreseeable injury." *Prentis*, 365 N.W.2d at 187. And that is a question of fact. Thus, the open and obvious dangerousness of a simple tool does not *necessarily* mean that the risks of foreseeable injury in using the tool are reasonable and that the manufacturer has therefore met its duty to design a product that is not unreasonably dangerous. Accordingly, I am convinced that the Michigan Supreme Court would adopt the "open and obvious" rule for failure to warn claims, and the "unreasonable risk of foreseeable injury" rule for defective design claims as stated in *Adams*.

I do not agree, however, that the Michigan Supreme Court would adopt the ultimate decision of *Adams* that, as a matter of law, Bic had no duty to make its lighters child-resistant. At this point, it is important to note the procedural posture of *Adams*. The court of appeals in *Adams* was reviewing a lower court's summary judgment for Bic that was entered before discovery was complete. 497 N.W.2d at 520.

The procedural posture of *Owens*, as well as several statements in the opinion, make it clear that the "unreasonable in light of the foreseeable injuries" test is a factual inquiry. In *Owens*, the Michigan Supreme Court affirmed a directed verdict in favor of the defendant at the close of plaintiff's case. 326 N.W.2d at 374–75. In doing so, however, the court twice referred to the *factual* nature of the defective design test:

> The *factual* inquiry demanded is whether a forklift is unreasonably dangerous when it fails to include a factory-installed driver restraint, such as a seat belt.

*Id.* at 378 (emphasis added).

> In the entirety of plaintiff's proofs, there is no data or other *factual* evidence concerning the magnitude of the risks involved, the utility or relative safety of the proposed alternatives, or evidence otherwise concerning the "unreasonableness" of risks arising from failure to install driver restraints on the subject forklift model as standard equipment.

*Id.* at 379 (emphasis added). The court affirmed the verdict largely because of the factual failures in the plaintiff's proofs.

In *Adams*, however, the plaintiff did not have an opportunity to put on any proofs. Indeed, because discovery was not complete when judgment for Bic was entered, it was unclear what proofs plaintiff would be able to present. The Michigan Supreme Court has made it rather clear that the issue of the reasonableness or unreasonableness of the risks involved in various alternative designs is a matter to be decided by the fact-finder at trial. This issue may be removed from the fact-finder only if the plaintiff utterly fails to present the jury with a genuine issue of material fact concerning those risks. The *Adams* court took that task away from the jury, and I do not think the Michigan Supreme Court would approve it doing so.

Judge Suhrheinrich's opinion argues that rejecting *Adams* means that the "determination of whether a particular design presents an unreasonable risk of foreseeable injury may *never* be resolved by the court on summary judgment." This is not necessarily true. As with any factual issue, the plaintiff must make a sufficient showing of proof to create a genuine issue of material fact. My position does mean, however, that motions for summary judgment will very rarely be appropriate before the close of discovery. Even if, as a practical matter, my colleague's prediction were true, this is the result I believe is required by existing Michigan law.

Therefore, following the precedent of *Owens* and the guidance of *Glittenberg*, I would hold that, as a matter of law, Bic owed the duty to design its lighter to eliminate any unreasonable risk of foreseeable injury. Whether it did so is a question of fact, and whether the pleadings and papers in this case frame that question of fact has never been decided. In all events, the district court erred when it concluded that the open and obvious rule obviated the threshold inquiry of duty in this design defect case. I would set aside the judgment for Bic and remand the case to the district court for further proceedings.