Douglas BEAVER, Next Friend
of Robert Joseph Beaver, a
minor, Plaintiff,

v.

HOWARD MILLER CLOCK COMPANY,
INC., a Michigan corporation,
Defendant.

No. 1:91–cv–506.

United States District Court,
W.D. Michigan,
Southern Division.

May 23, 1994.

Harry M. Philo, Richard L. Steinberg, Philo, Atkinson, Steinberg, White, Stephens & Whitaker, Detroit, MI, Ronald A. Karp, Law Offices of Chaikin & Karp, Rockville, MD, for plaintiffs.

Ralph M. Reisinger, David J. Bloss, Roberts, Betz & Bloss, P.C., Grand Rapids, MI, for defendants.

E. Robert Blaske, Blaske & Blaske, Battle Creek, MI, for arbitrator.

## OPINION AND ORDER ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

MILES, Senior District Judge.

This matter is before the court on the motion of defendant Howard Miller Clock Company, Inc. ("Howard Miller") for judgment on the pleadings or, in the alternative, for summary judgment (docket no. 36). Plaintiff Douglas Beaver, as next friend of Robert Joseph Beaver, has opposed the motion. For the reasons which follow, the court hereby **GRANTS** the motion.[1]

---

1. Both parties have requested oral argument on this motion. However, the court has considered this request and has determined that oral argu-

## FACTS

On September 15, 1989, ten month old Robert Joseph Beaver (known as "R.J.") was seriously injured when a grandfather clock designed and manufactured by defendant Howard Miller tipped over. At the time of the accident, R.J. was playing with his two year old brother William in the living room of the home of their parents, Douglas and Carol Beaver, in Gaithersburg, Maryland. No one witnessed the event other than R.J. and William; Carol Beaver, the only adult in the home at the time, had left her children alone in the family room of the house in order to heat a baby bottle. She was talking on the telephone when she heard a loud crash. Upon discovering that the children were no longer in the family room where she had left them, Mrs. Beaver ran to the living room, where she discovered R.J. lying injured.

Exactly how the clock was caused to fall is a matter of dispute. Hospital records state that William Beaver was playing behind the clock when it fell. This same version of events was apparently also given to emergency personnel who arrived at the Beaver home immediately after the accident. However, Carol Beaver, who obviously did not witness the accident, has since expressed the opinion that R.J., who weighed approximately 22 pounds, pulled the 89–pound clock over on himself. By sheer coincidence, the CBS news show "48 Hours" was filming an episode on trauma medicine at the Washington, D.C. hospital where R.J. Beaver was taken for treatment of his injuries (R.J. was hospitalized for 30 days after the accident). On the day after the accident, the Beavers apparently allowed the CBS film crew into their home. On outtakes of the CBS videotape, William Beaver indicated to his parents that he did in fact cause the clock to tip when he tried to hide behind it. Plaintiff, however, contests this version of the events, arguing that the video outtakes are inadmissible and unauthenticated, and, apparently, that William Beaver is not a competent witness. The court finds this dispute regarding precisely how the accident occurred to be immaterial for purposes of this motion.[2] It suffices to say that one or both of the children caused the clock to fall, thereby injuring R.J. Beaver.

On June 17, 1991, Douglas Beaver, as next friend of his son R.J., filed this action, alleging causes of action based upon negligence, breach of implied warranty, and/or strict liability.[3] The negligence count includes allegations of negligent design and failure to warn.

## ANALYSIS

Howard Miller has moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), or in the alternative, for summary judgment. Rule 12(c) provides that if, on a motion filed under the rule, matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment and disposed of pursuant to Fed.R.Civ.P. 56. Because Howard Miller has presented matters outside the pleadings which have not been excluded, the court will treat the motion as one for summary judgment.

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir.1988). In evaluating a motion for summary judg-

ment would not materially aid it in the resolution of the motion.

**2.** Plaintiff's own furniture design expert, John Pile, has opined that it would have been "difficult" for R.J. to have pulled the clock over. Pile Dep. at p. 57. Plaintiff has also presented the deposition testimony of the Howard Miller employee who engineered the clock, Jack Hommes. Mr. Hommes testified that due to the clock's design a child of R.J.'s age would not have been able to grip it sufficiently to pull it over.

Hommes Dep. at p. 15. Under the circumstances, therefore, the court is at a loss to comprehend plaintiff's adherence to a factually unsupported theory of the accident. Fortunately, the court is simply not called upon to resolve this factual dispute.

**3.** The complaint named as defendants both Howard Miller and Jack Miller, a shareholder of Howard Miller. On motion, the court dismissed all claims against Jack Miller.

ment, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The party moving for summary judgment bears the burden of establishing the non-existence of any genuine issue of material fact and may satisfy this burden by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). While inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Only factual disputes which may have an effect on the outcome of a lawsuit under the applicable substantive law are "material." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

*The Adams Affidavit*

At the outset, the court addresses Howard Miller's motion to strike the affidavit of a proposed engineering expert, Vaughn P. Adams, which plaintiff has submitted in support of his opposition to the motion for summary judgment.[4] Howard Miller argues that the affidavit should be stricken (1) because Mr. Adams' opinions will not assist the trier of fact, as required by Fed.R.Evid. 702, and (2) because the affidavit is not based on personal knowledge and does not set forth facts admissible in evidence, as required by Fed.R.Civ.P. 56(e).

■ The court declines to strike Mr. Adams' affidavit based upon Howard Miller's objection as to its helpfulness to the trier of fact. The two-page affidavit, which purports to express an opinion regarding whether the grandfather clock was defectively designed or should have been sold with warnings attached, may be of limited probative value. However, the court finds no justification for striking the document from the record simply because it may not be as helpful as plaintiff may have hoped it would be.

■ The court likewise declines to strike the affidavit because it is not based on personal knowledge and fails to detail those facts which form the basis for the opinion expressed. While affidavits of experts who have not familiarized themselves with the record are generally insufficient to withstand a summary judgment motion, expert affidavits which set forth the basis for the opinions given should be considered in determining whether the party opposing the motion has met his burden. *See Monks v. General Elec. Co.,* 919 F.2d 1189, 1192 (6th Cir.1990) (in ruling on motion for summary judgment, district court erred in striking expert's affidavit as inadmissible under Fed.R.Evid. 703 where expert provided basis for his conclusions and his qualifications were not disputed). Mr. Adams' affidavit does state that he has reviewed the materials generated by the discovery undertaken in this case. Thus, he has provided *some* basis for his opinion, however brief his description of that basis may be.[5]

The court's denial of the motion to strike does not, however, conclude the matter. "[T]he issue of the admissibility of an expert's affidavit is distinct from the issue of whether the affidavit is sufficient to withstand a summary judgment motion." *Id.* at 1192–93. The substance of Mr. Adams' affidavit has therefore been considered in re-

---

4. The court previously denied Howard Miller's motion to strike the affidavit due to its tardiness (the affidavit was filed by plaintiff approximately one month after he filed his brief in opposition to the motion for summary judgment). Howard Miller also sought to have the affidavit stricken as irrelevant. In its order denying the motion to strike, the court deferred its determination of the affidavit's relevance for consideration with the merits of the present motion.

5. The issue of the sufficiency of Mr. Adams' affidavit may now even be moot. Mr. Adams was deposed by Howard Miller on March 25, 1994, after this motion had already been fully briefed. Plaintiff requested the opportunity to submit a copy of the deposition transcript to the court, and the court held its ruling on this motion in abeyance in order to allow plaintiff the opportunity to do so. In his deposition, Mr. Adams elaborates on the basis for his opinion.

viewing the merits of Howard Miller's summary judgment motion.

*Third–Party Conduct*

 Howard Miller, which contends that the clock was tipped by William Beaver instead of R.J., argues that the company may not be held liable for the actions of William which injured his brother. In support of its argument, Howard Miller cites to inapplicable case law holding that as a general rule, a defendant has no duty to protect an individual who is endangered by the conduct of a third person. *See Johnson v. Bobbie's Store,* 189 Mich.App. 652, 473 N.W.2d 796 (1991); *Sierocki v. Hieber,* 168 Mich.App. 429, 425 N.W.2d 477 (1988). However, in the products liability context, the Michigan Supreme Court has held that a manufacturer of a product owes a legal obligation of due care to a bystander affected by the use of its product. *Moning v. Alfono,* 400 Mich. 425, 254 N.W.2d 759, 762 (1977). Accordingly, even if it were to be shown that the accident did happen as Howard Miller now contends, the court would—and does—reject the company's argument that it owed no duty of care to R.J. Beaver.

*Duty to Warn*

In his complaint, the plaintiff alleges that Howard Miller was negligent in "fail[ing] to provide adequate warnings and instructions" with its grandfather clock. In its motion for summary judgment, Howard Miller argues that the plaintiff has failed to state a claim for failure to warn because a grandfather clock is a simple product presenting obvious dangers.

 Under Michigan products liability law, a manufacturer has no duty to warn consumers of the obvious dangers presented by a simple product. *Glittenberg v. Doughboy Recreational Ind.,* 441 Mich. 379, 491 N.W.2d 208, 215 (1992). This principle follows from the well-established rule that there is no duty to warn of dangers which are open and obvious. *Id.* 491 N.W.2d at 214. In this context, providing a warning does not serve to make the product safer. *Id.* at 215.

 When a defendant claims that it owes no duty to warn because of the obvious na-

ture of a danger, the court is required to make a threshold determination whether reasonable minds can differ with respect to whether the danger of the product is open and obvious. If reasonable minds cannot differ as to the obvious nature of the danger, the court decides the question as a matter of law. However, if reasonable minds can differ, the obviousness of the risk is a jury question. *Id.* at 217. As the Court stated in *Glittenberg,*

> [d]etermination of the 'obvious' character of a product-connected danger is objective. The focus is the typical user's perception and knowledge and whether the relevant condition or feature that creates the danger associated with use is fully apparent, widely known, commonly recognized, and anticipated by the ordinary user or consumer.

491 N.W.2d at 213.

 Howard Miller's grandfather clock is an elegant piece of furniture with a high vertical profile and a relatively narrow base. As previously stated, the clock weighs a total of approximately 89 pounds. According to Howard Miller, the company has been manufacturing the clock following essentially identical standards for nearly a century.

What is the danger associated with Howard Miller's clock, according to the plaintiff? Its alleged instability. Translated into its most simple terms, using plaintiff's own words:

> The essence of the problem is that tall and thin pieces of furniture may be accidentally tipped over if someone leans on one side.

Memorandum in Opposition to Motion for Summary Judgment at p. 5. Despite having so characterized the ·danger, the plaintiff nonetheless argues that Howard Miller has not met its burden of showing that the danger of tipping was open and obvious as a matter of law because Howard Miller has not shown that R.J. Beaver or his parents "could appreciate the subtle scientific laws of physics set in operation" when the clock was tipped. *Id.* at p. 23.

The court concludes that reasonable minds could not differ and that the danger presented by the grandfather clock—that it can be

tipped over if someone leans or pushes on it—is open and obvious. Certainly, neither R.J. Beaver nor his brother William could reasonably be expected to realize that the clock could be tipped over if used as a plaything. However, in making its determination, the court must necessarily consider what the product's ordinary user would understand about its characteristics. Ten month old and two year old children are not the typical users of the product in question; certainly, plaintiff has not shown that Howard Miller marketed or sold its grandfather clocks for use by small children or as children's furniture. Therefore, what is important is what R.J. and William Beaver's parents could be expected to perceive. The court concludes that the fact that a tall, slender piece of furniture may be tipped over if pushed, pulled, or played with must be obvious to adults such as Douglas and Carol Beaver. That they may not comprehend how to calculate the amount of force necessary to tip the clock does not change the fact that they must have known that the clock could be caused to fall.[6] Accordingly, the court concludes that Howard Miller had no duty to warn users of this danger.

*Design Defect*

In his complaint, the plaintiff alleges that Howard Miller was negligent in its design of the grandfather clock, which plaintiff describes as "dangerously unstable." In its motion for summary judgment, Howard Miller argues that its clock was not defectively designed and that it had no duty to childproof its product, which is intended for adult use, to prevent it from being tipped over by playing youngsters.

Under Michigan law, "[a] manufacturer has a duty to design its product so as to eliminate any unreasonable risk of foreseeable injury." *Prentis v. Yale Mfg. Co.*, 421 Mich. 670, 365 N.W.2d 176, 186 (1984) (citing *Owens v. Allis–Chalmers Corp.*, 414 Mich. 413, 425, 326 N.W.2d 372 (1982)). In assessing whether a product has been defectively designed, Michigan courts apply a negligence/risk-utility balancing test, which requires the trier of fact "to consider the alternatives and risks faced by the manufacturer and to determine whether in light of these the manufacturer exercised reasonable care in making the design choices it made." *Prentis*, 365 N.W.2d at 184. Included among the factors which must be considered are the magnitude of the risks involved, in particular, the likelihood of an accident; the utility of the proposed alternative design or designs; the safety of the proposed alternative design or designs; and the cost involved. *Owens*, 326 N.W.2d at 379. Where the magnitude of the risks is uncertain because of the unknown incidence of accidents involving the product, "an examination of the effects of any proposed alternative design must bear a heavy burden in determining whether the chosen design was unreasonably dangerous." *Id.*

Howard Miller argues that while it is certainly foreseeable that a grandfather clock could be knocked over due to its physical properties, it is not foreseeable that a grandfather clock would attract the attention of small children as a plaything. The court cannot agree with the latter assessment. It is foreseeable that virtually *any* household product which is made accessible to young children could attract their attention and potentially cause injury. This is so, whether the product is furniture, appliances, utensils, or cleaning supplies.[7] However, acknowl-

---

**6.** In this regard, plaintiff's furniture design expert, John Pile, opines that a layperson would not be able to undertake the scientific calculations involved in determining how much force could cause the clock to tip over. However, in *Glittenberg*, the Court rejected a virtually identical argument made regarding the dangers of diving into aboveground swimming pools:

[A]ll properties of the pools in these cases were knowable, and known. The fact that most individuals do not understand how the laws of physics operate during a dive no more alters the perceived danger in the use of this product than failure to understand the medical reasons why a cut with a knife that severed a major artery could lead to death or catastrophic injury.

491 N.W.2d at 215.

**7.** Plaintiff has submitted the affidavit of a pediatrician, Dr. Kathryn L. Moseley, who opines that the ticking and chimes of a grandfather clock would attract the attention of a small child. However, it is commonly known that curious young children may be attracted to any household product. Therefore, the court is uncertain

edging the foreseeability of injury does not conclude the inquiry, for in order to justify presentation of the negligence issue to the jury, plaintiff must present some evidence demonstrating how likely children are to be injured by the product in question.

Howard Miller contends that it has been unable to locate any case law which involves a grandfather clock causing injury to a small child. Although the company has been manufacturing such clocks under essentially identical standards for nearly a century, it contends that it has received only one claim of injury involving a grandfather clock (other than the Beavers' claim).[8] Plaintiff has not disputed this assertion. Instead, he has presented the affidavit of his attorney, who states that while preparing this case "he has become aware of at least two other incidents where people were injured by tall clocks which tipped over because of inherent instability in design."[9] In addition, plaintiff has also attempted to support his case by presenting unsworn evidence showing that the Consumer Product Safety Commission has received numerous reports of injuries to young children who played with or climbed upon other types of furniture, including ovens; dressers; wardrobes; cedar chests; desks; and cribs. Plaintiff's engineering expert, Mr. Adams, was apparently able to solicit "field information" from one dealer about the frequency of clock repairs performed due to tipovers.[10] However, plaintiff has also presented evidence showing that Howard Miller has manufactured as many as one million clocks since the early 1950's. Hommes Dep. at 27. This evidence merely serves to highlight the uncertainty that accidents involving grandfather clocks occur with any frequency. In view of this uncertainty, plaintiff therefore bears a heavy burden of showing that Howard Miller's chosen design was unreasonably dangerous. *Owens,* 326 N.W.2d at 379.

With respect to whether Howard Miller's design was unreasonably dangerous, Mr. Adams has expressed the opinion that the clock does not pass the "tip-stability test" set forth in the American National Standards Institute ("ANSI") and Underwriters' Laboratory ("UL") *American National Standard for Household Clocks* (1985).[11] However, plaintiff admits that Mr. Adams has not tested the clock. Moreover, Mr. Adams' opinion is not based on a review of the results of any other tests performed on the clock in question or on an identical clock.[12] Mr. Adams

---

how this particular opinion satisfies the requirement of Fed.R.Evid. 702 that opinion evidence assist the trier of fact.

**8.** This claim purportedly involved an elderly woman who pulled a clock over while pulling the weight cords. However, Howard Miller contends, and plaintiff has not disputed, that this claim did not involve the same model of clock as that at issue in this case; instead, it involved a clock with a pinched waist and narrower profile.

**9.** The plaintiff has not indicated how he plans to present this information at trial.

**10.** In his deposition, Mr. Adams testified that he had visited one dealer who reported repairing three or four grandfather clocks yearly due to tipovers. Mr. Adams thus extrapolates that the total number of tipovers must reach into the thousands. However, Mr. Adams' testimony is without foundation. Howard Miller has presented the affidavits of two representatives of this same dealer who report that they have repaired only two clocks damaged in tipovers during a seven and one-half year period. One of these clocks was an antique "waisted" model, while the other was a contemporary grandfather clock manufactured by the Emperor Company.

**11.** Mr. Adams does not describe this standard in his affidavit or deposition. However, a purported copy of the ANSI/UL publication regarding household clocks has been attached as an exhibit to plaintiff's brief opposing this motion. The publication provides in pertinent part as follows:

23.1 A floor clock shall be subjected to a tipover stability test as described in paragraph 23.2

\* \* \* \* \* \*

23.2 The clock is to be placed in its intended upright position at the center of a plane that is inclined 8 degrees from horizontal. Legs or other means of support may be blocked to prevent slippage. The results are acceptable if the clock does not tip over.

Plaintiff has also attached copies of various other purported standards as exhibits to his brief, including standards applicable to file cabinets and refrigerators. The applicability of these standards to grandfather clocks has not been substantiated by the affidavit or otherwise, and their relevance to this case escapes the court. The court has therefore not considered them.

**12.** Howard Miller has admitted that prior to marketing its clock, it did not test the product to determine the potentiality for serious injury in

also opines that "*any* risk of serious injury or death is unreasonable or unacceptable if reasonable accident prevention methods could eliminate it." Plaintiff's furniture design expert, John Pile, has opined that alternatives to the clock's design which would improve its stability include increasing its weight,[13] increasing the depth of its base, adding ballast, or using a wall brace or safety anchor.[14] The cost of adding a safety strap to the clock would have been approximately $1.75.[15] Plaintiff has presented no evidence regarding the cost of the remaining proposed alternative designs.

Plaintiff has, therefore, presented evidence tending to show that Howard Miller could have designed a more stable clock. However, Howard Miller's position is not that it *couldn't* improve the stability of its product. Instead, Howard Miller argues that because of the relative rarity of accidents involving the clock and the obvious nature of the risk presented, its design choice was reasonable as a matter of law.

A recent case decided by the Michigan Court of Appeals, *Adams v. Perry Furniture Co.,* 198 Mich.App. 1, 497 N.W.2d 514 (1993), *appeal denied,* —— Mich. ——, 519 N.W.2d 860 (1994), compels the court to conclude that no genuine issue of material fact exists regarding whether Howard Miller's grandfather clock satisfies the *Owens* risk-utility test. In *Adams,* the court held that a manufacturer of disposable butane lighters had no duty to make its product child-resistant, in view of the fact that the product is intended to be sold only to adults. *Id.* 497 N.W.2d at 520. A divided Sixth Circuit panel has since held that *Adams* is authoritative on the question of whether Michigan law requires a manufacturer of a simple product to design safety features to protect users—including children—from open and obvious dangers associated with the product. *Kirk v. Hanes Corp.,* 16 F.3d 705 (6th Cir.1994), *reh'g denied,* (6th Cir. Mar. 28, 1994).

■ Plaintiff argues that the "open and obvious" defense does not apply in this case because a grandfather clock is not a simple tool but a "complex appliance" and piece of furniture. A "simple tool" has been defined as "a product all of whose essential characteristics are fully apparent." *Glittenberg,* 491 N.W.2d at 210. Given this definition and plaintiff's own description of the hazard presented by the clock (i.e., that it is "tall and thin" and "may be accidentally tipped over if someone leans on one side"), the court can reach no conclusion other than that the clock is a simple tool. A grandfather clock is designed to be displayed as an item of furniture and to keep time. Its nature is not complex. Plaintiff's own comparison of the clock to other unquestionably simple products which may be overturned, such as ovens, dressers, bookshelves, and wardrobes, reinforces this conclusion.

Both *Adams* and *Kirk* involved injuries caused by children playing with cigarette lighters. It need hardly be said that a grandfather clock does not present the same danger as a cigarette lighter; its operation does not produce fire. However, like a cigarette lighter a grandfather clock is a simple product which presents an obvious danger caused by a natural force. That the force in question is gravity rather than flame does not—in the court's view—render the princi-

---

the event of a tipover. Neither of plaintiff's experts has tested the clock or an exemplar of the clock.

13. Mr. Pile has admitted that while adding weight to the clock might make it more stable, a hypothetical heavier clock could inflict greater physical damage than the subject clock if it were caused to fall. Pile Dep. at p. 36–37.

14. Plaintiff has repeatedly emphasized that Howard Miller began incorporating a safety strap into some of its products in 1993. However, evidence of this subsequent remedial measure is clearly offered to show negligence and is thus inadmissible under Fed.R.Evid. 407. Although plaintiff contends that this evidence has been offered for other purposes, i.e., to show feasibility, feasibility of this safety measure has not been contested. *See* Plaintiff's Second Supplemental Reply in Opposition to Defendant's Motion for Summary Judgment at p. 10 ("Mr. Hommes has agreed that Defendant's safety strap was feasible in every way in 1982").

15. The total cost of manufacturing the subject clock was approximately $255. Hommes Dep. at p. 23.

ples applied in *Adams* and *Kirk* inapplicable here. Like the cigarette lighters at issue in those cases, Howard Miller's clock indisputably was not marketed for use by children. Unlike the incidence of injuries caused by children playing with lighters, the incidence of injuries caused by children playing with grandfather clocks is not well documented. The relative infrequence of injury reports associated with the use of such clocks does suggest that the product is far safer when left in the presence of unattended small children.

The court must confess that it is not convinced that *Adams* represents a correct statement of Michigan law on design defects. However, the court nonetheless considers itself bound by the *Kirk* majority's conclusion that *Adams* correctly states the controlling Michigan law in design defect cases, which federal courts are bound to apply.[16] Because plaintiff has failed to raise a genuine issue of material fact as determined by the controlling substantive law, the court will grant Howard Miller's motion for summary judgment on the claim of defective design.

*Implied Warranty*

 Plaintiff has included in his complaint a claim for breach of implied warranty. This claim, like plaintiff's negligence claim, is based on plaintiff's allegation that Howard Miller "designed a grandfather clock which was top-heavy and dangerously unstable." Because of its design, plaintiff alleges, the clock was defective.

"When proceeding under a theory of implied warranty, a design defect is established by proof that the product is not reasonably safe for the uses intended, anticipated, or reasonably foreseeable." *Prentis*, 365 N.W.2d at 186. Howard Miller has stressed, and the plaintiff has not disputed, that the function of its product is to be displayed as

an item of furniture and to keep time; the clock is not designed to serve as a toy or a piece of children's furniture. Moreover, as Howard Miller has noted, there is no indication in the record that the clock suffered any deficits which would make it unfit for its intended or foreseeable uses.

The court concludes that plaintiff has failed to state a cause of action in breach of implied warranty. Under Michigan law, this cause of action requires a showing that the product was defective in the sense that it was not functioning properly at the time of the accident in question. *King v. R.G. Indus., Inc.*, 182 Mich.App. 343, 451 N.W.2d 874, 875 (1990). Plaintiff has admitted in responses to requests for admission that at the time of the accident, the clock was functioning appropriately. Accordingly, the court grants Howard Miller's motion to dismiss this claim.

*Strict Liability*

 Plaintiff's complaint also purports to state a claim of strict liability in tort. However, strict liability is not available under Michigan law. *See Prentis*, 365 N.W.2d at 181 n. 9 ("We do not agree ... that this Court abandoned fault concepts"); *see also Hickey v. Zezulka*, 439 Mich. 408, 440 Mich. 1203, 487 N.W.2d 106, 122 n. 11 (1992) ("this Court has not adopted the doctrine of strict products liability"). Accordingly, the court will also grant Howard Miller's motion to dismiss this claim.

### CONCLUSION

For the foregoing reasons, the court **GRANTS** Howard Miller's motion for summary judgment.

So ordered.

---

**16.** The dissenting panel member in *Kirk*, Judge Ryan, has expressed the opinion that *Adams* was mistakenly decided and that the Michigan Supreme Court would not decide the case in the same manner. 16 F.3d at 711. More specifically, Judge Ryan has expressed the opinion that the "open and obvious" rule applies only in cases alleging failure to warn and not in design defect cases. *Id.* at 712. Judge Ryan is himself a former member of the Michigan Supreme Court.

An application for leave to appeal *Adams* was recently denied by the Michigan Supreme Court after having been under consideration for over 15 months. That Court's failure to accept review of the case perhaps suggests that some members of the Court agree with its reasoning. Whatever the case, however, the denial clearly leaves *Adams'* precedential value intact.