SMITH, Circuit Judge,
concurring in part and dissenting in part.
I respectfully dissent because I conclude that, applying Arkansas substantive law with respect to all of Curtis Lumber’s claims, Curtis Lumber is not the real party in interest to prosecute the present action.
[Federal Rule of Civil Procedure] Rule 17(a) provides: “[e]very action shall be prosecuted in the name of the real party in interest.” Fed.R.Civ.P. 17(a). The real party in interest is a party who, under governing substantive law, possesses the rights to be enforced. See Iowa Public Serv. Co. v. Medicine Bow Coal Co., 556 F.2d 400, 404 (8th Cir.1977).
“In a diversity action, state law determines the issue of who is a real party in interest.” Jaramillo v. Burkhart, 999 F.2d 1241, 1246 (8th Cir.1993).
Consul Gen. of Republic of Indonesia v. Bill’s Rentals, Inc., 330 F.3d 1041, 1045 (8th Cir.2003) (emphasis added). “Such a requirement is in place ‘to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata.’ ” United Healthcare, 88 F.3d at 569 (quoting Fed.R.Civ.P. 17(a) Advisory Committee Note).
Here, Arkansas law governs who “possesses the rights to be enforced.” Consul Gen., 330 F.3d at 1045. Curtis Lumber has brought claims under Arkansas law for violation of the ADTPA, negligent misrepresentation/constructive fraud, equitable estoppel, and intentional misrepresentation/fraud. Therefore, we must look to Arkansas’s “substantive law” to determine whether Curtis Lumber is the proper party to bring these claims.
With regard to the ADTPA, Arkansas law provides that “[a]ny person who suffers actual damage or injury as a result of an offense or violation as defined in this chapter has a cause of action to recover actual damages, if appropriate, and reasonable attorney’s fees.” Ark.Code Ann. § 4-88-113(f) (emphasis added). Similarly, Arkansas law provides that in order for a plaintiff to recover for fraud, “a plaintiff must show,” among other things, “damage suffered as a result of the reliance [upon the false representation of material fact].” McAdams v. Ellington, 333 Ark. 362, 970 S.W.2d 203, 205 (1998) (emphasis added). The same is true for constructive fraud, see Knight v. Day, 343 Ark. 402, 36 S.W.3d 300, 302 (2001), and promissory estoppel, see Shaw v. Smith, No. CA 87-393, 1988 WL 42674, at *2 (Ark.Ct.App. May 4, 1988) (unpublished).
As the majority notes, Curtis Lumber alleges that it has sustained actual damages for lost profits and rebates that it paid to its customers. See supra Part II.D.1-2. The question of whether Curtis Lumber has sustained actual damages under Arkansas substantive law and, in turn, is the proper party in interest to bring the present suit, turns on whether Arkansas’s voluntary payment rule applies to its claims for damages.
*787 Originally, the district court found that Curtis Lumber could not recover the rebates or refunds that it paid to its customers because those payments were “voluntary,” and Curtis Lumber was under no legal obligation to make those payments. The court also found that the “economic duress” exception to the voluntary payment rule did not apply because that rule would only apply if LP had exerted economic duress over Curtis Lumber to force Curtis Lumber to pay the rebates to LP-not the customers. But the court found that Curtis Lumber had provided enough evidence of lost profits and increased costs to withstand LP’s summary judgment motion on the issue of actual damages.
Thereafter, LP filed a motion for reconsideration, arguing that any Curtis Lumber damage must be “separate and independent from a claim of a rebate applicant, which would only be the $2,400 if they ever sued LP.” LP asserted that
the lost profit that they [Curtis Lumber] would seek in this case could only be a part of a $2,400 rebate claim, because that is the amount of money that Mr. Curtis built into his sales price when he sold the SmartSide products. And, thus, if he were to sue us for a lost profit — and he’s already told us on the average the lost profit per customer who bought $2,400 of material was $600. If he sues us for that and the Court lets him do that and then a customer later sues LP for its rebate of $2,400, we ultimately pay a $3,000 amount on a $2,400 rebate.
So [L.P.’s] position is that the lost profit could only be a part of the rebate claim of the claimant and he has no right to recover that, because it’s not separate and distinct.
LP then asserted that no exception to the voluntary payment rule applied.
Curtis Lumber also confirmed for the district court that it had initially charged the accounts of customers who had not made a payment on their account; when the customers then informed Curtis Lumber that they did not want the product, Curtis Lumber then “wrote off the account or credited the account for the amount that had been originally billed under an invoice.” Curtis Lumber did not consider this to be a “voluntary payment” because it had not paid the customers anything; furthermore, the customers did not receive the product, nor had they ever paid Curtis Lumber.
But the district court found that this was a “distinction without a difference,” explaining:
If they paid you money and you refund them money to erase a debt, then if they have been charged and then you forgive that charge by writing off the account, the bottom line is the same. All of the money has been refunded to the customer either in the form of cash if they advanced cash or credit if they have just been charged on an account. It seems to me that ... under these circumstances, if it’s undisputed that all of the customers were either refunded cash for what they were advanced or given credit to cancel their account, that they all fall under this voluntary payments rule and would not be included as damages.
In its order granting LP’s motion for reconsideration, the district court found that “the voluntary payment rule precludes the Plaintiff from recovering lost profits based upon the facts of this case.”
On appeal, Curtis Lumber argues that the district court erred in holding that the voluntary payment rule barred its recovery because its “cancelation [sic] of orders and payment of refunds and rebates to its customers were not ‘voluntary’ in either the common-sense or legal meaning of the *788 word” because its “actions and damages ... were the result of L[.]P[.]’s fraud and duress placed on Curtis Lumber.” (Emphasis added.)
“It has long been settled that money voluntarily paid in satisfaction of an unjust or illegal demand, with full knowledge of the facts, and without fraud, duress, or extortion, cannot afterwards be recovered by the payor.” Larrimer v. Murphy, 72 Ark. 552, 82 S.W. 168, 169 (1904).[22] “In order for the voluntary-payment rule to apply, [the payor] must not have had [a legal] duty [to pay].” TB of Blytheville, 946 S.W.2d at 933.
Under Arkansas law, “the making of the advancements and the placing of the credits to [an] account” is a “payment.” Ritchie, 110 S.W. at 592.
Where there is an open account between two parties, in the absence of an agreement to the contrary, all items of the account become constituent parts thereof, and are applied in payment of the oldest item in the account on the other side; and he only is entitled to recover in whose favor the final balance upon the whole account is found. The rule is, where there are mutual accounts, the credits on one side are applied, to the extinguishment of debits on the other, as payments intentionally made thereon.

Id.

As to Curtis Lumber’s claim for lost profits, the majority concludes that “[although Curtis Lumber’s payments to customers arguably were ‘voluntary,’ Curtis Lumber’s alleged lost profits were not.” See supra Part II.D.l. But Curtis Lumber’s claim for lost profits stems from it either (1) refunding in total a customer who already paid for the SmartSide products or (2) crediting back the account of a customer who had ordered, but not yet paid for, SmartSide products. Although it may have been a reasonable business decision, Curtis Lumber has failed to produce any evidence that it was under a legal obligation to make this refund or credit to its customers. See TB of Blytheville, 946 S.W.2d at 933. Furthermore, both the refunding of customers and the crediting back of customers’ accounts constitute “payments” under Arkansas law, as the district court correctly concluded. See Ritchie, 110 S.W. at 592. As a result, the voluntary payment rule is applicable unless Curtis Lumber can show that an exception to the rule applies. See Larrimer, 82 S.W. at 169.
As to the rebates that Curtis Lumber paid to some of its customers, the majority notes Curtis Lumber’s concession that “it had no enforceable obligation to pay rebates to its customers. Instead, it argues that the fraud and duress exceptions to the voluntary payment rule apply, and therefore, payment of the rebates was not voluntary.” See supra Part II.D.2.
I concur in the majority’s conclusion that the fraud exception does not apply, but I extend its conclusion to both Curtis Lumber’s claims for rebates and lost profits. See supra Part II.D.2. I respectfully dissent from the majority’s conclusion that “the Arkansas Supreme Court would hold that duress may -have existed in this case.” Id. Instead, I conclude that the duress exception does not apply to either Curtis Lumber’s claim for rebates or lost profits.
First, I disagree with the majority’s dismissal of the Arkansas Supreme Court’s statement in Vick
*789 that a payment is not to be regarded as compulsory, unless made to emancipate the person or property from an actual and existing duress imposed upon it by the party to whom the money is paid.... It is sufficient ... when there is some actual or threatened exercise of power possessed, or believed to be possessed, by the party exacting or receiving the payment over the person or property of another from which the latter has no other means of immediate relief than by making the payment.
Vick, 4 S.W. at 61 (emphasis removed and added; quotations and internal citations omitted). “Dicta can, of course, have persuasive value.” Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 762 (11th Cir.2010). Furthermore, “[i]n the absence of a definitive ruling by the highest state court, a federal court may consider ... dicta ... to show how the highest court in the state would decide the issue at hand.... ” Michelin Tires (Canada) Ltd. v. First Nat’l Bank, 666 F.2d 673, 682 (1st Cir.1981); see also Kirk v. Hanes Corp. of N. Carolina, 16 F.3d 705, 709 (6th Cir.1994) (“But, because even dicta may be of some value in ascertaining the relevant state law, we consider it on that basis.”).
In the absence of a definitive ruling by the Arkansas Supreme Court regarding whether duress can be asserted against a non-payee, the language in Vick should be our guide as to how the highest court in the state would resolve the present issue. Vick explicitly states that the duress imposed upon the plaintiff must be “by the party to whom the money is paid.” 4 S.W. at 61. Here, Curtis Lumber paid the money to its customers — not to L.P.
Second, although the majority relies on Bishop, in Bishop, the Arkansas Court of Appeals stated that the party asserting duress must have “ ‘no other means of immediate relief than by making the payment.’ ” 250 S.W.3d at 573 (quoting Vick, 4 S.W. at 61). As previously discussed, Curtis Lumber has presented no evidence that it was under any legal obligation to LP or to its customers to pay the refunds and rebates. Thus, Curtis Lumber was “best able to avoid the loss by not paying” the customers. See id.
Finally, the Cox case that the majority found “informative as to how the Arkansas Supreme Court would apply the duress exception in the context of the voluntary payment rule,” see supra Part H.D.2., is distinguishable. In Cox, the broker — -the payor- — -sought to recover directly from the payee — the driver — not from a third party — the trucking company. 867 S.W.2d at 462. In contrast, Curtis Lumber — the payor — is seeking to recover from a third party — LP—not from the payees- — the customers.
Accordingly, would apply the Arkansas voluntary payment rule and find that Curtis Lumber has not sustained actual damages under Arkansas substantive law. Consequently, I would hold that Curtis Lumber is not the proper party in interest to bring the present suit.
Therefore, I would affirm the judgment of the district court.

. As an initial matter, Curtis Lumber’s assertion that it paid its customers because of L.P.’s “fraud and duress” is an implicit concession that the voluntary payment rule is applicable because fraud and duress are two exceptions to the voluntary payment rule. See Larrimer, 82 S.W. at 169.